CASE 25.—ACTION BY SAM C. MOLLOY'S ADMINISTRATRIX AGAINST THE L. & N. R. R. CO. FOR DAMAGES FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—March 2.

## Louisville & N. Railroad Co. v. Molloy's Admx.

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiff.   Defendant appeals. Reversed.

| 122 | 219 |
| 123 | 792 |
| e123 | 793 |

| 122 | 219 |
| 126 | 719 |

| 122 | 219 |
| 129 | 160 |

| 122 | 219 |
| 131 | 282 |
| 135 | 86 |

| 122 | 219 |
| 137 | 554 |

1. Railroads—Crossings—Care in Approaching—Rate of Speed—Signals—The rule that the speed of trains must be moderated, applies to cities and towns where the population is dense and the presence of persons may be anticipated on the track at crossings but it does not apply to highway crossings in the country, or to those not within the settled portions of a town. At ordinary highway crossings in the country no rate of speed is negligent, but where the speed of the train is great, care in giving warning must be observed. Signals required by the statute should be given. (Kentucky Statutes, 786.)

2. Evidence—Instructions—Danger—Knowledge of Deceased—Contributory Negligence—Where the evidence shows that it was clearly impracticable for those in charge of a train, after a wagon and team in which one killed by the train was riding, had started up an incline approaching a crossing and came in sight of the train, to have stopped the train before reaching the crossing, or to have avoided striking the wagon,

it was error in the court to instruct the jury that "although the decedent was himself negligent in attempting to pass over the crossing in front of the train and thereby contributed to his injury and death, if the jury further believe from the evidence that defendant's agents and servants in charge of the train knew, or by the use of ordinary care, could have known of the peril of the deceased in time to have prevented the injury to him by the use of ordinary care, they should find for the plaintiff," as the jury may have inferred from this instruction that the defendant was liable, if proper signals were not given, although there was contributory negligence on the part of the decedent.

3. Same—The object of signals of the approach of a train is to notify persons of its coming. If a person in fact knows of the approach of a train he cannot complain that signals of its approach were not given as required by law. Where there was evidence in the case to the effect that deceased and his driver knew of the approach of the train before they attempted to drive on the track and in time to have avoided the injury, the jury should have been instructed that if when at a safe distance from the track deceased knew of the approach of the train and with this knowledge undertook, or, consented for the driver of the wagon in which he was riding, to undertake to pass over the crossing ahead of the train, he assumed the risk and the defendant is not liable.

4. Res gestae—Substantive Testimony—Statements Made on the Ground—On the trial of an action for damages for the killing of one while attempting to cross a railroad track in a wagon driven by another, evidence as to what the driver of the wagon said about the collision, on the ground, within two or three minutes after the collision, was competent as substantive testimony as part of the res gestae.

5. Expert Testimony—Opinion Evidence—Witnesses should not be allowed to give their opinion as to whether a railroad crossing is dangerous. The facts as to the crossing may be shown, and the jury, when the facts were proven to them, were as competent to judge of this matter as the witnesses.

B. D. WARFIELD W. A. NORTHCUTT and J. A. MITCHELL for appellant.

1. The court erred in compelling appellant to try this case in absence of a material witness, the full effect of whose testimony

could not be obtained from the affidavit as to what he would testify, which was read as his deposition.

2. The court erred in refusing peremptorily to instruct the jury to find for appellant. No negligence was proven against appellant, and the grossest kind of negligence, but for which the accident would not have happened, was proven against decedent and his driver.   (Dryden v. P. R. Co., 61 Atl. 249.)

3. No evidence should have been admitted or instruction given predicating a right of recovery upon the character of the crossing, the proof showing conclusively that the alleged obstructed view of the crossing was a condition for which appellant is not responsible.   (L. & N. R. Co. v. Breeden's Admx., 111 Ky. 729.)

4. The law did not require of appellant to slacken the speed of its train for the crossing at which the accident happened.   (Parkerson's Admx. v. L. & N. R. Co., 25 R. 2260.

5. In approaching the crossing in a fast trot, without checking speed, stopping, looking, or listening, decedent and his driver were both of them guilty of negligence which was the proximate, if not the exclusive, cause of the accident, and should bar any recovery in this action.   (Wright v. Cincinnati, &c., R. C., 94 Ky. 114; L. & N. R. Co. v. Cummins' Admr., 111 Ky. 338; Rupard v. C. & O. R. Co., 88 Ky. 280; Wolf v. Washington R'y & Nav. Co., 79 Pac. 997.)

6. The court committed prejudicial error in refusing to permit witnesses to testify to statements made by Oller, the driver of the vehicle, within five minutes or less after the accident happened, as to the cause of the accident, and that it was due to decedent's insisting upon crossing the railroad ahead of the train, although Oller did not wish to make the attempt.   This evidence was competent as part of the res gestae, and its exclusion from the jury was very prejudicial to appellant.   (L. & N. R. Co. v. Foley, 94 Ky. 220; Sherley v. Billings, 8 Bush, 155; McLeod v. Ginther, 80 Ky. 399.)

7. Appellee concedes the train gave sundry whistle signals which were heard by other persons situated less favorably for hearing them than were decedent and his driver, but claims that no specific signal was given for the particular crossing at which the accident happened. Even if this is true, appellant is not to be held liable with repsect to signals. Any signal which the occupants of the vehicle ought to have heard and heeded was all that was required of appellant.   (Section 786, Ky. St., is inapplicable: L. & N. R. Co. v. Dalton, 102, Ky., 290; C. & O. R'y Co. v. Gunter, 108 Ky. 366; Helm v. L. & N. R. Co., 17 Ky. Law Rep., 1004.)

8. The engineer, even if he had seen the vehicle sooner than he

did do, would have had a right to presume that the driver would stop and give the train precedence over the crossing. (L. C. & L. R. Co. v. Case's Admr., 9 Bush, 728.)

9. The instructions given the jury on appellee's motion were vitally erroneous in many particulars. (L. & N. R. Co. v. Creighton, &c., 106 Ky. 42; Ib. v. Eakin's Admr., 103 Ky. 465; Ib. v. Hall's Admr., 115 Ky. 567, 579; Covington Sawmill & Mfg. Co. v. Drexilius, &c., 27 Ky. Law Rep., 903; L. & N. R. Co. v. McCombs, 21 Ky. Law Rep. 1238; Section 786, Ky. St., supra; Gahagan v. B. & M. R. Co., 55 L. R. A. 426; 2 Thomp. Commentaries, Section 1485.)

10. The court erred in refusing instructions asked by appellant. (L. S. R. Co. v. Bohon, 12 Ky. Law Rep., 390; L. & N. R. Co. v. Smith, 107 Ky. 178.)

11. The court erred in giving the jury an instruction that they could not impute the negligence of Oller, the driver of the vehicle, to decedent, who was sitting on the same seat with the driver, and erred in refusing to instruct the jury on this branch of the case as requested in instructions asked by appellant. (L. & N. R. Co. v. Harrod, 115 Ky. 877; Cahill v. C. N. O. & T. P. R. Co., 92 Ky. 345; Thorogood v. Bryan, 8 C. B. 115; D. L. & N. T. P. Co. v. Stewart, 2 Met. 119; L. C. & L. R. Co. v. Case's Admr., supra; Shearman & Redfield cn Negligence, section 66, section 66a and note; Thomp. Commentaries, section 503; C. P. R. Co. v. Chatterson, 14 Ky. Law Rep., 663; Brickell v. N. Y. C. & H. R. R. Co., 24 N. E. 449; 120 N. Y. 290; Garteiser v. G. H. & S. A. Ry. Co. 21 S. W. 633; Johnson et al. v. Gulf &c. R'y Co., Ib. 274; Cuddy v. Horn, 46 Mich, 596, 10 N. W. 32; Larkin v. B. C. R. & N. R. Co., 52 N. W. 480, 85 Ia. 492; Becke v. M. P. A. R. Co., 45 A. & E. R. Cases, 177; Holden v. Missouri R. Co., 76 S. W. 973; N. Y. P. & N. R. Co. v. Cooper's Admr., 37 A. & E. R. Cases, 33; Webster v. Hudson R. Co., 38 N. Y. 260; I. C. R. Co. v. McLeod, 52 L. R. A. 954.)

THOMAS W. THOMAS for appellee.

GREER and MARBLE, BAIRD and RICHARDSON and R. C. P. THOMAS of counsel.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. Appellant was not entitled to a continuance on account of the absence of witness Ford, because it failed to use due diligence in securing his presence. (Civil Code of Practice, section 315.)

2. The court when overruling the motion for continuance and

requiring the affidavit as to what the absent witness. would state to be read as evidence, did not abuse its discretion, which it had a right to exercise under the law.

3. The statement of J. A. Burnette and others, which the appellant sought to introduce as a part of the res gestae were properly not admitted by the lower court as substantive evidence, but were properly admitted as evidence contradicting Oller.  (Louisville & Cincinnati Packet Co., v. Sanders, &c., 22 Ky. Law Rep., 797; Am. & Eng. Ency. Vol. 21, 114-121; Wharton on Evidence, Vol. 1, section 261, page 27.)

4. The court permitted the statements of Oller to Butler to go to the jury as part of the res gestae.   The statements thereafter made by Oller to Burnett and others, being merely a repetition of the statements to Butler, therefore, such reptitions were not also admissible as part of. the res gestae.

5. The witnesses who testified about statements made by Oller to them, say that Oller was crazy at the time he made the statements, for this reason his statements were incompetent for all purposes.

6. General negligence being charged in the petition, it follows therefore, that any evidence is admissible that tends to show negligence.   (L. C. & L. R. R. Co. v. Cace's Admr., 9 Bush., 732.)

7. Inasmuch as the record shows that the crossing at which Molloy was killed was obstructed, dangerous and much travelled, and that the train was running from 20 to 40 miles -an hour, at which time the engineer was leaning his body out of the window of the cab, waving ,at a lady, and the fireman at the time, not being engaged in the discharge of any duty, the peremptory instruction was properly refused.

8. The "scintilla doctrine" is in force in this State and it is a fixed rule of this court that, "If there is any evidence to sustain a recovery, the case must be submitted to the jury."   (I. C. R. R. C., v. Walters, 22 Ky. Law Rep., 137; Dick v. L. & N. R. Co., Ky. Law Rep., 1068; L. & N. R. Co. v. Howard, 82 Ky. 212; Adams v. Craycraft, 1 Ky. Law Rep., 330; L. & N. R. Co., v. Clark's Admr. 20 Ky. Law Rep., 1377.

9. "This court has time and again refused to lay down the rule of stop, look and listen."   (L. & N. R. R. v. Price's Admr., 25 Ky. Law Rep., 1034; Pittsburg, &c., Ry., v. Lewis, 18 Ky. Law Rep., 958.)

10. Similar instructions to those given in this case have been approved by this court.   (L. & N. R. R. Co., v. Cooper, 23 Ky. Law Rep., 1658; L. & N. R. R. Co., v. Cummins, 23 Ky. Law Rep.,

683; L. & N. R. R. Co., v. Ramsey, 89 Ky., 90; Elliott on Rail Road, Vol. 3, 1747.)

11. Even though the instructions as to the measure of damages may have been erroneous, appellant did not offer any instruction curing the defect. (Council of Frankfort v. Howard, 25 Ky. Law Rep., 111; L. & N. R. R. Co., v. Cooper, 23 Ky. Law Rep., 1658; Clark v. Baker, 7 J. J. M., 197; L. & N. R. R. Co., v. Harrod, 25 Ky. Law Rep., 250; I. C. R. R. Co., v. Jackson, 25 Ky. Law Rep., 2087; Sec. 317 Civil Code and Louisville Ry. Co., v. Blum and same v. Goodman, decided October 20, 1905, by this court.)

12. After the witnesses described the crossing and surroundings it was not error for the witness to say that the crossing was dangerous.

13. This court will never reverse on the ground that the verdict is not sustained by the evidence, unless such verdict is clearly and palpably against the weight of the evidence. (Thompson v. Thompson, 94 Ky., 453; McCormick Harv. Machine Co., v. Disney, 12 Ky. Law Rep., 139; 1 A. K. Mar., 520; 19 Ky. Law Rep., 345; 102 Ky., 216; 103 Ky., 206, and 20 Ky. Law Rep., 169.)

14. The appellant confuses the law of assumed risk with that of contributory negligence. The former grows out of the law of contracts expressed or implied, the latter out of the failure to use due care in the performance of a duty. (Chicago, &c., R. R. Co. v. Prescott, 59 Fed. Rep., 257.)

15. The law of imputed negligence does not apply to this case. (Thompson on Negligence, Vol. 1, sections 77, 499, 500, 502 and 513; Danville, Lancaster & Nashville T. P. Co. v. Stewart, 2 Met., 119; L., C. & L. R. R. Co. v. Case's Admr., 9 Bush., 728; Cahill v. C., N. O. & T. P. Ry. Co., 92 Ky., 345; L. & C. Packet Co. v. Mulligan, 25 Ky. Law Rep., 1290; Robinson v. N. Y. C. R. Co., 66 N. Y. 11 and Dran v. Penn. R. Co. 1290.)

16. Precautions required of railroads at crossings for safety of the traveling public. (Southern R. R. Co. v. Barbour. 21 Ky. Law Rep., 226 C. & O. R. R. Co. v. Gunter, 21 Ky. Law Rep., 1803; N. N. & M. V. v. Stewart, 99 Ky., 496; L., C. & L. R. R. Co. v. Goetz's Admr., 79 Ky., 442; L. H. & St. L. R. R. Co. v. Lyon, 22 Ky. Law Rep., 544; L. & N. R. R. Co. v. Cumming's Admr., 23 Ky. Law Rep., 681.)

17. Negligence at crossing. (a) As to signals. (L. C. & L. R. R. Co. v. Goetz's Admr., 79 Ky., 442; Eskridge's Exrs. v. C., N. O. & T. P. R. R. Co., 89 Ky., 369; Ramsey v. L. C. L. Ry. Co., 89 Ky., 101; E. Tenn. Coal Co.v.Harshaw, 16 Ky. Law Rep., 526; L. & N. R. R. Co. v. Brannan, 13 Ky. Law Rep., 334; L. & N. R. R. Co.

v. Higginbotham, 14 Ky. Law Rep., 927; L. & N. R. R. Co. v. Tip-penhauer, 10 Ky. Law Rep., 401; C. & O. R. R. Co. v. Dixon's Admr., 20 Ky. Law Rep., 792; L. & N. R. R. Co. v. Cooper, 21 Ky. Law Rep., 1658.

(b) As to rate of speed. (L. C. & L. R. R. Co. v. Goetz's Admrx., 79 Ky., 442; Ramsey v. L. C. & L. Ry. Co., 89 Ky., 101; L. & N. R. R. Co. v. Ward's Admr., 19 Ky. Law Rep., 1900, Crowley v. L. & N. R. R. Co., 21 Ky. Law Rep., 1434; C. & O. v. Dixon's Admr. 20 Ky. Law Rep., 792.)

18. Failure to stop, look and listen not contributory negligence per se. (Cin. Ry. Co., &c., v. Wright, 17 Ky. Law Rep., 1277; Ill. Cent. R. R. Co. v. Mizell, 18 Ky. Law Rep., 738; Pittsburg, &c., Ry. Co. v. Lewis, 18 Ky. Law Rep., 957.)

Injury avoidable notwithstanding contributory negligence. (Pittsburg, &c., Ry. Co. v. Lewis, 18 Ky. Law., 957; Crowley v. L. & N. R. R. Co., 21 Ky. Law Rep., 1344.)

19. Doctrine of Imputed Negligence or Identification. repudiated and overruled. (Duval v. Atlantic Coast Line R. R. Co., 65 Lawyer's Reports Annotated, p. 722; Little v. Hackett, U. S. S. Ct. R., 116, p. 652; 29th Lawyer's Edition, 366; New York, Lake Erie & Western R. R. Co. v. Steinbrenner, 23rd Am. & Eng. R. R. Cases, p. 330; 77th South Western, p. 704 (Ky. Dec.); 76 S. W., p. 153; 2nd Metcalf, 119; 9th Bush (72nd Ky., 731), 728; South Cov. & Cin. Ry. Co. v. Hengholtz, 20th Law Rep., p. 750; Am. & Eng. Ency. of Law, old Ed., p. 82, Vol. 4.)

OPINION OF CHIEF JUSTICE HOBSON.—Reversing.

On Sunday, March 27, 1904, Sam C. Molloy, an attorney, on his way to Brownsville to attend court on the next day, reached Glasgow Junction on the morning train, and hired L. H. Oller, a livery stable man, to take him over to Brownsville in a buggy. They got in the buggy about 12 o'clock, and started to Brownsville. From the hotel from which they started the road to Brownsville runs for about a quarter of a mile parallel with the Louisville & Nashville Railroad, and at this point it abruptly turns to the right, going up a slight incline across the railroad track. Just as the horses reached the track, a freight train going

south, running rapidly, struck the buggy, killing Molloy and seriously hurting Oller. This suit was filed by Molloy's administratrix to recover damages for his death, and, verdict and judgment having been rendered in her favor for $9,000, the railroad company appeals.

Glasgow Junction is a town of 250 inhabitants. The crossing in question, though within the town boundary as established by the Legislature, is outside the built-up portion of the town. The crossing is 1,200 feet from the station; it is 438 feet from the railroad section house, and 490 feet from the next nearest house. Five thousand one hundred and seventy feet north of the crossing is a tunnel. When the train in question came out of the tunnel, the engineer blew the usual station signal, one blast of the whistle. The conductor gave him what is called the high-ball; that is, an order to go ahead. He recognized the signal by two blasts of the whistle. Soon after this the engineer blew four blasts for the semaphore, which is controlled by the agent at the station, and, the semaphore being turned, responded by two blasts of the whistle in recognition of the signal. After this, and before he reached the station, he blew the usual signal for the road crossing north of the station and 600 or 700 yards from the crossing in question. After passing this crossing, according to the plaintiff's proof, the engineer did not blow his whistle or ring the bell or give any signal of the approach of the train to the crossing where Molloy was killed, until he was within a short distance of it. The train was a heavy freight, running about 30 miles an hour. The proof of the plaintiff also showed that the engineer, after passing the station, instead of keeping a lookout on the track

in front of him, turned to wave a signal to a lady who lived on the side of the road, and was looking at her until shortly before the collision. On the other hand, the proof is that Oller left the hotel with Molloy in the buggy in a brisk trot, and that the train came along at just about the time it would take them to get to the crossing. In going along the pike the view of the train coming from the north would be obstructed until the parties turned to go upon the railroad and got within 30 or 40 feet of the center of the track. After this the train could be seen by the occupants of the buggy, and the engineer of the train might have seen the team approaching the track. The engineer testified that the first he saw of the team was the head of the horses as they came out from behind the obstruction, when he was about 100 feet from them. He admitted waving to the lady, but said he had turned around to his position some little time before the horses came in sight; that as soon as he saw them he gave the alarm, and put on the brakes, but that before the train could be checked it had run far past the crossing. The proof for the defendant also showed that the whistle was blown for this crossing, and that the bell was ringing as the train approached. Just where the road turns to go up to the railroad there is a swag. The defendant showed by several witnesses that, when the occupants of the buggy were about 40 feet from the crossing they were looking toward the train which they could see coming; that the man on the left-hand side of the buggy then struck the horses with the whip and rushed them on the track, where they wheeled quickly to the left just as the train came up, killing the horse next to the train, and killing Molloy, who was on that side of the buggy. That the

train whistled a number of times as it approached the station is testified to by all the witnesses, both for the plaintiff and the defendant, and these whistles were heard by persons much further from the train than the occupants of the buggy. A number of matters are relied on for reversal.

The defendant asked a continuance on the ground of the absence of Ellis Ford. An order had been made for the personal attendance of Ford at the trial, but the court properly refused to continue the case allowing the affidavit to be read as his deposition. There was nothing in his testimony as given in the affidavit to show that the proper effect of his testimony could not be had without the presence of the witness. He was absent from the State, and no subpœna had been served on him.

The evidence was sufficient to justify the submission of the case to the jury, and the court properly refused to give to the jury a peremptory instruction to find for the defendant. There was also some evidence of gross negligence, and the court did not err in submitting this question to the jury.

We see no substantial objection to the second, fifth, sixth and seventh instructions.

The third, fourth and eighth instructions are as follows:

"(3) The court instructs the jury that it was the duty of the defendant's agents and servants in charge of its freight trains, in running same, to use ordinary care to prevent collisions with and injury to persons traveling the public highway where it crosses defendant's railroad track at the place of the collision with said Sam C. Molloy, by beginning the giving of reasonably sufficient signals for said crossing at a reasonably

sufficient distance from said crossing when approaching same, and continuously, or at intervals, repeating said signals until the engine of said train reached said public highway crossing, in a reasonably sufficient manner to warn persons about to cross said railroad track upon said highway of the approach of said trains, and by keeping a lookout in approaching said public highway crossing for persons traveling upon said highway using or about to use said public highway crossing, and by approaching said crossing at such rate of speed as was reasonably consistent with the safety of persons traveling upon said highway and using or about to use said crossing, considering the character of the crossing, its surroundings and its use by the traveling public. And if the jury believe from the evidence in this case that on the occasion in controversy the defendant's agents and servants in charge of said trains did negligently fail in approaching said crossing to give such signals, or to keep such lookout or to use such rate of speed, and shall further believe from the evidence that said Sam C. Molloy was injured and killed by reason of such negligent failure, if any, of defendant's said agents and servants to give said signals, or keep said lookout, or use said rate of speed, they shall find for plaintiff.

"(4) The court further instructs the jury that it was the duty of the engineer and fireman or other trainmen in charge of the engine of said train to keep a lookout in approaching said crossing to prevent injury to those traveling upon the highway over said crossing, and although the jury may believe from the evidence that said Molloy was himself negligent in attempting to pass over said crossing in front of said

train and thereby contributed to his injury and death. If the jury further believe from the evidence that defendant's aforesaid agents and servants in charge of said train and engine knew, or by the use of ordinary care could have known, of the peril of said Sam C. Molloy in time to have prevented the injury to him, by the use of ordinary care, they should find for plaintiff and fix damages according to instructions Nos. 1 and 2."

"(8) The court instructs the jury that, if they shall believe from the evidence that the decedent, Sam C. Molloy, was placed in imminent danger by the negligence of the defendant, its agents, servants, or employes, on the occasion under investigation, then he had a right to use any means that appeared to him under the circumstances to be reasonably necessary to avoid such danger, if there was such danger, and, if the decedent, while using such means as then appeared to him to be reasonably necessary to avoid such danger, was injured and killed, still he was not guilty of contributory negligence, and the jury will so find."

The third instruction is erroneous, in requiring that the train should approach the crossing at such a rate of speed as was reasonably consistent with the safety of persons traveling upon the highway. The rule that the speed of trains must be moderated applies to cities and towns where the population is dense and the presence of persons may be anticipated on the track at crossings, but it does not apply to highway crossings in the country. While this crossing was within the corporate limits of the town, it was practically a country crossing. The rule is that at ordinary highway crossings in the country no rate of speed is negligent, but that, where the speed of the

train is great, care in giving warning of the approach of the train commensurate with the danger must be observed. Railroad Co. v. Goetz's Admr., 79 Ky., 442; 3 Ky. Law Rep., 221; 42 Am. Rep., 227; Parkerson v. L. & N. R. R. Co., 80 S. W., 468; 25 Ky. Law Rep., 2260. This being in effect a country crossing, the statute applies. Ky. Stats., 1903, section 786. · Signals as required by the statute should be given. There was no town ordinance regulating the signals to be given, and the statute does not mean that less care may be exercised at a crossing like this when just inside of the town boundary, than if it was just outside of the town boundary. The fourth instruction should have been omitted. Under the evidence it was clearly impracticable for those in charge of the train, after the team started up the incline and came in sight of the train, to have stopped the train before reaching the crossing, or to have avoided striking the vehicle. The jury may have inferred from this instruction that the defendant was liable if proper signals were not given, although there was contributory negligence on the part of the decedent.

Oller was a common carrier of passengers, and Molloy was no more cheargeable with his negligence than he would have been for the negligence of the mortorman if riding on an electric car. The latter part of the eighth instruction, following the words "Such danger," did not accurately state the rule of law applicable, which is thus put in 1 Shearman & Redfield on Negligence, section 89: "In judging of the care exercised by the plaintiff, reasonable allowance is always made for the circumstances of the case; and, if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circum-

stances, he is excusable for omitting some precautions or making an unwise choice, under this disturbing influence, although, if his mind had been clear, he ought to have done otherwise, especially if his peril is caused by the defendant's fault. If one is placed, by the negligence of another, in such a position that he is compelled to choose instantly, in the face of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence placed in such a position might make, the fact that, if he had chosen the other hazard, he would have escaped injury, is of no importance. When the question is one of mere inconvenience, and not actual danger, some moderate risk may be taken, if there is no obvious danger. But the plaintiff will be chargeable with contributory negligence if he runs the risk of an obvious and serious danger merely to avoid inconvenience.'' The same rule was announced by this court in South Covington, &c., Railway Company v. Ware, 84 Ky., 267; 8 Ky. Law Rep., 241; 1 S. W., 493.

In lieu of the latter part of the instruction, the court should tell the jury that, if the decedent, while using such means and acting as a person of ordinary prudence placed in such a position might reasonably act, was injured and killed, it was immaterial that if he had followed some other course he might have escaped injury. The defendant asked the court to give the jury this instruction, which was refused: ''The court instructs the jury that, although they may believe from the evidence that the defendant, or its servants in charge of the train, did not exercise ordinary care as defined in the instructions, still, if the jury believe from the evidence that the deceased,

Molloy, when at a safe distance from the track, knew of the approach of the train, and with this knowledge undertook, or negligently permitted, L. H. Oller, who was seated in the buggy with him, to pass over the crossing ahead of the train, he (said Molloy) assumed the risk, and the defendant is not liable, and the jury should so find.'' The object of signals of the approach of a train is to notify persons of its coming. If a person in fact knows of the approach of the train, he cannot complain that signals of its approach were not given as required by law. There was evidence in the case to the effect that Oller and Molloy knew of the approach of the train before they attempted to drive on the track, and in time to have avoided the injury. There was also proof from which the jury might conclude that with knowledge of the train's approach they undertook to beat it across the crossing. If, when at a safe distance from the track, Molloy knew of the approach of the train, and with this knowledge undertook or consented for Oller to undertake to pass over the crossing ahead of the train, he assumed the risk, and the defendant is not liable. Helm v. L. & N. R. R. Co., 33 S. W., 396; 17 Ky. Law Rep., 1004; I. C. R. R. Co. v. Jackson's Admr., 117 Ky., 900; 79 S. W., 1187; 25 Ky. Lay Rep., 2087. The court should have instructed the jury as above indicated. This idea was not presented in any of the instructions given.

The evidence of the witness R. T. Butler, as to what Oller said to him, was competent as res gestæ. Butler was a short distance off and witnessed the collision. He was the first person to get to Oller, and what Oller then said was properly admitted as substantive evidence. Dr. Blakeman was driving in a buggy

approaching the crossing. He was about a quarter of a mile from the crossing at the time of the collision and drove rapidly up to it. When he got there Mr. Butler and Mr. Dearing were there. Only two or three minutes had elapsed when he got there. John Burnett was sitting on his porch, 475 yards away and ran to the crossing at once, getting there just about the time that Dr. Blakeman did, or a little after. He asked Oller, "How in the world did this thing happen?" Oller said he had started with this gentleman to Brownsville, and when they got in the flat this side he stopped and told the gentleman to hold on, that they had better not try to cross, and the gentleman told him that he thought they could get across, and they started up. When they got right upon the railroad, the gentleman grabbed the lines and aimed to turn the horses to the left, and the engine struck the right-hand wheels and killed the right-hand horse. This occurred at the scene of the wreck, while Molloy was still lying there insensible and before anything had been moved. It is in substance the same statement as was made to Butler. Oller made the same statement at the same place to Garvin, the operator, about the same time, and within two or three minutes after the accident. Each of these statements were made by Oller within three minutes after the occurrence, and should have been admitted as res gestæ, being made at the scene of the wreck and so soon after its occurrence as to be fairly regarded as part of it and a verbal act explaining it. Insurance Company v. Mosley (U. S.), 8 Wall., 397; 19 L. Ed., 437; McLeod v. Ginther's Admr., 80 Ky., 399; 4 Ky. Law Rep., 276; Dills v. May, 3 Ky. Law Rep., 765; L. & N. R. R. Co. v. Foley, 94 Ky., 220; 15 Ky. Law Rep., 17; 21 S. W., 866; L. & N. R. R. Co. v. Shaw's

Admr., 53 S. W., 1048; 21 Ky. Law Rep., 1041; Floyd
v. Paducah Ry. Co., 64 S. W., 653; 23 Ky. Law Rep.,
1077; Petrie v. Cartwright, 114 Ky., 103; 70 S. W.,
297; 24 Ky. Law Rep., 903; 59 L. R. A., 720. The
statement to Butler was admitted as res gestæ, and
the statements to the other witnesses named, which
followed in such close connection, at the same place,
and as they arrived on the scene, must be equally
admissible; for it is hard to separate part of these
declarations from the others, they being all in sub-
stance to the same effect. The proof that Oller at
the time was badly hurt, and that he seemed not to
be in his right mind, is a fact to be weighed by the
jury in determining what weight they will give these
declarations; but the statements are nevertheless
competent for their consideration. Oller was an actor
in the transaction. These statements grew out of
the transaction and are so connected with it as to be
properly regarded as the transaction speaking. The
statements of Oller afterwards made to the trainmen
after they backed up, to the agent, E. Beeler, and
Mrs. Mentz, may be admitted for the purpose of
contradicting Oller as a witness, but not as substan-
tive evidence in the case.

The plaintiff was allowed to prove by eight
witnesses that the crossing was dangerous. The jury,
when the facts were proved to them, were as
competent to judge of this matter as the witnesses.
The witnesses were not experts, and it was not a
subject for expert testimony. All railroad crossings
are necessarily dangerous. The facts as to the cross-
ing may be shown, but the witnesses should not be
allowed to give their opinion on a matter that is not
the subject of expert evidence. L. & N. R. R. Co. v.

Millikin, 51 S. W., 796; 21 Ky. Law Rep., 489; Alabama, &c., R. R. Co., v. Hall, 105 Ala., 599; 17 South., 176; Smuggler, &c., Co. v. Broderick, 25 Colo., 16; 53 Pac., 169; 71 Am. St. Rep., 106; Tolson v. Coasting Co., 17 D. C., 44; District of Columbia v. Haller, 4 App., D. C., 405; Mayor v. Wood, 114 Ga., 370; 40 S. E., 239; Chicago v. McGivens, 78 Ill., 348; Albion v. Hetrick, 90 Ind., 549; 46 Am. Rep., 230; Hill v. Railroad Co., 55 Me., 444; 92 Am. Dec., 601; Lawson v. R. R. Co., 64 Wis., 459; 24 N. W., 618; 54 Am. Rep., 634.

Judgment reversed, and cause remanded for a new trial and further proceedings consitsent herewith.

JUDGE NUNN, dissenting.