## Chesapeake & Ohio Railway Company v. Warnock's Admr.

(Decided October 18, 1912.)

Appeal from Greenup Circuit Court.

1. Railroads—Trespasser on Track—Duty of Railroad Towards.—A railroad company ordinarily owes no duty to a trespasser until

his peril is discovered, and is not liable for any injury to him, unless, after his peril is discovered, the injury could have been avoided with proper care. This rule has been applied in all cases where the injury occurred in the country. On the other hand, in cities and towns where the population is dense, and from the number of persons passing, the danger to life is great, a different rule applies; and, in such localities it is the duty of those operating a railroad train to moderate the speed of the train, to give notice of its approach, to keep a lookout, and take such precautions as the circumstances demand for the proper security of human life.

2. Railroads—Question as to Exercise of Care by Traveler.— Whether a traveler exercised such care as may be ordinarily expected of the common run of persons, is a question depending on a number of circumstances, to each of which different men may give different weight, and is a matter peculiarily for the jury.

3. Railroads—Rule requiring Servants to Keep Lookout.—In order for a plaintiff to bring his case within the rule that requires the servants of a railroad company to keep a lookout, and give timely signals and warnings of the approach of its trains, it is incumbent upon the injured person to show that the place of the accident was a place where the presence of persons on the track was to be expected; and that fact may be shown by the extent of the use made by the public of the crossing at the scene of the accident.

4. Railroads—Warnings and Signals of Movements of Trains.—A railroad company should give reasonable and timely signals and warnings of the movements of its trains; and this duty is to be measured and made applicable to any particular case by the circumstances of that case. If the crossing is a public one, and in a place where the presence of people upon the track may be expected or anticipated, it is the duty of the railroad to give timely signals and warnings, regardless of the fact that the crossing is in an unincorporated town.

5. Railroads—Public Crossings—Lookout At—Ordinary Care.—In moving cars over a public crossing in a city or town, a railroad company must keep a lookout for persons using its track as a foot-way, and give reasonable signals and warnings of the movements of its cars when approaching said place, and to run its cars and trains at such speed as ordinary care for the safety of such persons requires.

6. Railroads—Signals—Knowledge of Approach of Train.—The object of signals of the approach of a train is to notify persons of its coming; and, if a person, in fact, knows of the approach of a train, he cannot complain that signals of its approach were not given, as required by law.

WORTHINGTON, COCHRAN & BROWNING for appellant.

S. S. WILLIS for appellee.

Opinion of the Court by Judge Miller—Reversing.

Fred Warnock, a young man 32 years old, was employed in Warnock Brothers' general merchandise store in Fullerton, a town of some five hundred inhabitants or more, in Greenup County. The store faced Ferry Street on the east side of the railroad track, while the railroad platform faced Ferry Street on the western or opposite side of the railroad track.

On June 4, 1910, Warnock Brothers received a shipment of cowpeas by rail, which had been unloaded on the depot platform on the opposite side of the track from Warnock's store. Fred. Warnock was standing in front of the store late in the afternoon, when a sudden shower of rain came up; and the cowpeas being uncovered, he started to cross the track to the platform for the purpose of covering the exposed cowpeas, so as to protect them from the rain. As he was about to cross the track, an east bound freight train, composed of 25 cars, crossed Ferry Street at a distance of about 60 feet from Warnock. When the engineer saw that Warnock was about to cross in front of the train, he blew repeated danger blasts, and applied the emergency brakes, but failed to stop the train before it struck Warnock. Warnock was knocked on to the platform, and received injuries from which he died on November 23, 1910, some five months later. Warnock's administrator having recovered a judgment for $6,777.77 damages, the defendant prosecutes this appeal.

We have the contradictory evidence, usual in such cases, tending to show the negligence of the trainmen, and the contributory negligence of the deceased. The weight of the evidence tends to show that the engineer failed to ring the bell, or sound the whistle, until about the time the train was crossing Ferry Street, at a distance of about 60 feet from the point where Warnock was struck by the engine. There is evidence, however, by the train crew that the engineer had sounded the whistle and rung the bell at some distance below the Ferry Street crossing. The engineer admits that he was running at a rate of from 15 to 18 miles per hour.

1. Appellant's first ground for reversal is, that Warnock having been injured upon appellant's private right of way, in an unincorporated community, he was a trespasser, and the appellant owed him no duty except to

use ordinary care to avoid injuring him after the discovery of his peril, and that it did exercise such care in this instance. This defense is based upon the idea that the duty which appellant owed Warnock was fixed by the fact that Fullerton was an unincorporated town, and that the rule applicable to trains running through country districts applied in Fullerton, because it was an unincorporated town. This is a misconception of the rule fixing the reciprocal rights of the parties, which has become well established in this State. In L. & N. R. R. Co., v. McNary's Admr., 128 Ky., 414, and after a full examination of the authorities upon this question, we announced the following general rule:

"This court has laid down in a long line of opinions that the railroad company ordinarily owes no duty to a trespasser until his peril is discovered, and that it is not liable for an injury to him, unless after his peril is discovered the injury to him may be avoided with proper care. This rule has been applied in all cases where the injury occurred in the country. L. & N. R. R. Co. v. Howard's Admr., 82 Ky., 212; Shackelford's Admr. v. L. & N. R. R. Co., 84 Ky., 43, 4 Am. St. Rep., 189; Brown's Admr. v. L. & N. R. R. Co., 97 Ky., 228; Goodman's Admr. v. L. & N. R. R. Co., 116 Ky., 900, 63 L. R. A., 657; C. & O. R. Co. v. See's Admr., 79 S. W., 252; 25 Ky. L. R., 1995, and cases cited.

"On the other hand, in cities and towns where the population is dense, and from the number of persons passing the danger to life is great, a different rule applies; and in such localities it is the duty of those operating railroad trains to moderate the speed of the train, to give notice of its approach, to keep a lookout and take such precautions as the circumstances demand for the proper security of human life."

And, in L. & N. R. R. Co. v. Molloy's Admr., 122 Ky., 230, we said:

"The rule that the speed of trains must be moderated applies to cities and towns where the population is dense and the presence of persons may be anticipated on the track at crossings, but it does not apply to highway crossings in the country. While this crossing was within the corporate limits of the town, it was practically a country crossing. The rule is that at ordinary highway crossings in the country no rate of speed is negli-

gent, but that, where the speed of the train is great, care in giving warnings of the approach of the train commensurate with the danger must be observed. Railroad Co. v. Goetz's Admr., 79 Ky., 442, 42 Am. Rep., 227; Perkerson v. L. & N. R. R. Co., 80 S. W., 468, 25 Ky. L. R., 2260. This being in effect a country crossing, the statute applies. Ky. Stats., 1903, section 786. Signals as required by the statute should be given. There was no town ordinance regulating the signals to be given, and the statute does not mean that less care may be exercised at a crossing like this when just inside the town boundary, than if it was just outside of the town boundary.''

See also C. N. O. & T. P. Ry. Co. v. Harrigan's Admr., 149 Ky., 59.

In I. C. Ry. Co. v. Murphy's Admr., 123 Ky., 794 we formulated the rule fixing a railroad's duty to trespassers upon its tracks, as follows:

''Appellant admits that it owed a 'lookout duty' at the point where Murphy was struck. But is that all that the railroad company owed under such circumstances? It might do little good to keep a lookout on a train running at a high rate of speed, when, if the peril is seen, because of the rate of speed and weight of the train, it will be impossible to avoid the collision. The only advantage would be to give warning. We think the duty in such cases is to operate the train with the fact of the trespasser's presence in mind—that is, at a speed which has the train under control, and keeping such a lookout as will enable the operatives to give timely warnings of its approach, as well as to stop it in case of necessity before injury has been inflicted on the trespasser. Legislation has not regulated the speed of trains in such communities. Each case must rest till then upon its own facts. Whether the speed is so great as to amount to negligence will be a fact to be determined by the jury, for the circumstances will necessarily vary, according to the population, the use of the track for passage by foot or vehicle travelers, the obstruction to the view, and so forth.''

It is apparent, therefore, that appellant's duty to the appellee was not to be regulated by the fact that Fullerton was, or was not, an incorporated town, but by the facts of the case which bring it within the second clause of the rule as above announced in the McNary case. Al-

though Fullerton was not an incorporated town, it was a town in fact; and the place where the accident occurred was such a locality that the presence of persons on the track might be anticipated at any time.

2. It is further contended by appellant that Warnock went upon the tracks with knowledge of the train's approach, and was therefore guilty of contributory negligence, as a matter of law; and that, if he did not know of the train's approach, he was, under the circumstances of this case, negligent, as a matter of law, in failing to discover it. If this contention were sound, it would take from the jury the question of negligence and leave it with the court. That question, however, is not an open one in this State. It was expressly passed upon in L. & N. R. R. Co. v. McNary, 128 Ky., 420, where we used this language:

"To hold as a matter of law that the footman is guilty of contributory negligence barring a recovery for his injury whenever he goes upon a railroad track without stopping, looking, or listening would be practically to exempt railroads from all responsibility in cases of this sort; for there are few cases indeed where the footman if he stopped, looked, or listened could not save himself by stepping to one side and waiting for the train to pass. But the fact is that a person thinking of his own business is sometimes unmindful of where he is, and will get on the railroad track before he is aware of it, or he will from other causes be endangered from passing trains. So it is that in crowded localities, when the presence of persons on the track is to be anticipated, a lookout is required of those operating trains, and notice of their approach and such moderation of speed as will make a lookout and signals of the train's approach available for the safety of the traveling public. In each case the question whether the traveler used proper care will depend on a number of circumstances, such as the number of trains passing, the warning of the train's approach, and the circumstances surrounding him. In this State if there is any evidence the question is for the jury and the scintilla rule applies to questions of contributory negligence no less than to other questions. Where the scintilla rule does not prevail, a different conclusion is reached by the courts; but where the scintilla rule is followed, the cases are in the main in accord with the conclusion stated above, for the reason that whether the

traveler exercised such care as may be ordinarily expected of the common run of persons being a question depending on a number of circumstances, to each of which different men may give different weight, is a matter peculiarly for the jury.''

The language quoted *supra* from the opinion in the Murphy case sustains the same view.

3. Again, it is contended that the trial court erred in authorizing the jury to consider the extent of the use made by the public of the highway crossing near the scene of the accident. Ferry Street is a public crossing over the railroad track, in an unincorporated town of from 500 to 1,000 inhabitants. In order, therefore, to bring the case within the rule that required the appellant to keep a ''lookout'' and give timely signals and warnings of the approach of its trains, it was incumbent upon appellee to show that the place of the accident was a place where the presence of persons on the track was to be anticipated; and we know of no better evidence of that fact, than evidence showing the extent of the use of the crossing by the public. Unless such use had been shown, appellee was a trespasser and would not have had the right to submit to the jury the law governing the reciprocal rights of the parties, as above pointed out. C. N. O. & T. P. Ry. Co. v. Harrigan's Admx., 149 Ky., 58. The instruction submitting that question, was approved in the McNary case, *supra*.

4. Instruction No. 1, required appellant, among other things, to give ''reasonable and timely signals and warnings of the movements of the trains,'' and ''to run its cars and trains at such speed as ordinary care'' for the safety of the traveling public, required. It is contended that this instruction was erroneous and that section 786 of the Kentucky Statutes controls this case, Fullerton being an unincorporated town. That statute reads as follows:

''Every company shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such bell shall be rung, or whistle sounded, outside of incorporated cities and towns, at a distance of at least fifty rods from the place where the road crosses upon the same level any highway or crossing, at which a sign-board is required to be maintained, and such bell shall be rung or whistle sounded continuously or alternately until the engine has

reached such highway crossing, and shall give such signals in cities and town as the legislative authorities thereof may require."

The argument is, that since the accident, in this case, did not occur in any incorporated city or town, the only duty imposed by law upon the appellant company, in the operation of this particular train through Fullerton, was to give the statutory signals as the train approached any particular crossing; and, that so much of instruction No. 1 as required appellant to give "reasonable and timely signals and warnings," was erroneous, because it went beyond the requirements of the statute, in prescribing appellant's duty. This contention, however, is not supported by the authorities. We have heretofore shown that the duty which required appellant to give "timely signals and warnings" of the approach of its trains, is measured, and made applicable to any particular case, by the circumstances of that case. If the crossing is a public one, and in a town or city where the presence of people upon the track may be expected or anticipated, it is the duty of the railroad to give "timely signals and warnings," regardless of the fact that the crossing is in an unincorporated town. This being, in effect, a town crossing, it was proper to instruct the jury as though it were in an incorporated town. L. & N. R. R. Co. v. Molloy's Admr., 122 Ky., 231.

Furthermore, this precise instruction was approved in L. & N. R. R. Co. v. McNary's Admr., supra; in fact, the instruction given in this case is a substantial copy of the instruction approved in that case.

5. Neither was it error to require the appellant to run its trains at such speed as ordinary care for the safety of the traveling public required. In the McNary case the accident occurred in Barnsley, a town of from 400 to 500 inhabitants—a town smaller than Fullerton, where the accident occurred in this case. The clause in the instruction that required appellant to moderate or check the speed of the train in passing through Fullerton, was likewise copied from the instruction in the McNary case. To be specific, the instruction in the McNary case required the railroad company, "when moving cars on that part of the track, to keep a lookout for persons using it as a foot-way, and to give reasonable signals and warnings of the movements of its cars when approaching said place, and to run its cars and trains at

such speed as the ordinary care for the safety of such persons, required."

This question was before the court in I. C. Ry. Co. v. Murphy's Admr., 123 Ky., 795, where we had this to say:

"Fast trains are a necessity, but nobody has the right to be in such a hurry as to run over and kill people who happen to get in their way, and who have the right to be, or are known to be, at the point of collision. No requirement of commerce can justify such a rule, nor has such an inhuman doctrine any place in our laws. L. & N. R. R. Co. v. Lowe, 118 Ky., 260; 80 S. W., 768; 65 L. R. A., 122; and L. & N. R. R. Co. v. Daniel, *supra,* state the rule to the contrary of appellant's contention. * * * The difference between the cases in the country and those in thickly settled towns and cities is one of practical materiality. In the country there are occasional sporadic uses of the tracks by the foot passengers, but they are comparatively rare. To compel the railroad trains to creep along under full control, in anticipation of what probably would not occur, viz.: the meeting or overtaking of a stray trespasser, would not be reasonable because most likely wholly unnecessary. But in populous communities the probabilities are all the other way. The foot passengers, from long habit of use, which are known to and suffered by the company, may reasonably be expected at all times, and in any number. It is more than a mere probability—it is a reasonable certainty—that they will be found there. The company should no more shut its eyes to such a probability within its knowledge, than to the actual fact of the presence when known. We will not say that to dash at uncontrollable speed through such a town, where people are known to be using the tracks for passing, is not negligence. Let the jury say whether it is."

C. & O. R. R. Co. v. Booth, 149 Ky., 251; L. & N. R. R. Co. v. Molloy's Admr., 122 Ky., 230, and Southern R. R. Co. v. Sanders, 145 Ky., 684, are to the same effect.

6. Instruction No. 3 reads as follows:

"Unless the defendant's servants in charge of the said train were negligent as defined in No. 1, the jury should find for the defendants, and although there was such negligence on the part of the defendants, yet if in going on the railroad track as he did, the decedent failed to use ordinary care for his own safety, and but for this would not have been injured, then the jury will find for

the defendants notwithstanding such negligence on their part."

This instruction is criticised by appellant, because it did not advise the jury as to the duties owed by Warnock to himself; and, in lieu thereof, appellant offered, but the court refused to give, instruction A, which reads as follows:

"The court instructs the jury that it was the duty of the decedent, Fred Warnock, in approaching the tracks of the defendant railway company, and in attempting to cross the same, to use such care as may be usually expected of an ordinarily prudent person, under like or similar circumstances, to learn of the approach of the train and to keep out of its way; and if they believe from the evidence that the said Fred Warnock failed to exercise such care for his own safety, and but for such failure, if any, upon his own part, he would not have been injured, then the law is for the defendants, and the jury should so find even though they may believe from the evidence that the defendant or its employes were negligent as set out in instruction No. 1."

It will be noticed that while instruction No. 3 required Warnock to use ordinary care for his own safety, it did not define "ordinary care," but left that matter for the jury's own determination. Appellee replies, however, to this criticism, by pointing out that instruction No. 4 supplied any deficiency that might be found in instruction No. 3, by defining "ordinary care," in the following terms:

"No. 4. 'Negligence' and 'negligently,' as used in these instructions, is the failure to exercise ordinary care.

"'Ordinary care' is such care as a man of ordinary prudence might be reasonably expected to exercise under like circumstances."

While instructions 3 and 4, when read together, gave the law of the case (and we do not reverse the judgment because it was so given), we are of opinion that instruction A should have been given in place of them, since it defines Warnock's duty and covered the entire question submitted to the jury in one instruction, and was to be preferred for that reason.

7. Appellant offered, but the court refused to give, instruction "B," which reads as follows:

"The court instructs the jury that if they believe from the evidence that the decedent, Fred Warnock, when he attempted to cross the tracks of the defendant company, knew of the approach of the train described in the proof and was injured in attempting to cross ahead of said train, then the law is for the defendants and the jury will so find, even though they may believe from the evidence that the defendant company and its employes were negligent as set out in instruction No. 1."

No instruction was given covering the view here expressed. There was evidence tending to show that Warnock saw the train, and attempted to run in front of it, by crossing the track in a diagonal direction, and in the same direction that the train was going. Donohue, the engineer, testified that Warnock saw the engine, and that he would not have gone in the direction that he went if he had not seen it; while Cook, the head brakeman, who was on the front seat in the box, says that Warnock looked over his left shoulder at the approaching train. In L. & N. R. R. Co. v. Molloy's Admr., 122 Ky., 233, we said:

"The object of signals of the approach of a train is to notify persons of its coming. If a person in fact knows of the approach of the train, he cannot complain that signals of its approach were not given as required by law. There was evidence in the case to the effect that Oller and Molloy knew of the approach of the train before they attempted to drive on the track, and in time to have avoided the injury. There was also proof from which the jury might conclude that with knowledge of the train's approach they undertook to beat it across the crossing. If, when at a safe distance from the track, Molloy knew of the approach of the train, and with this knowledge undertook or consented for Oller to undertake to pass over the crossing ahead of the train, he assumed the risk, and the defendant is not liable. Helm v. L. & N. R. R. Co., 33 S. W., 396; 17 Ky. L. R., 1004; I. C. R. R. Co. v. Jackson's Admr., 117 Ky., 900; 79 S. W., 1187. The court should have instructed the jury as above indicated. This idea was not presented in any of the instructions given."

There was, therefore, sufficient evidence to require the court to give an instruction covering the point indicated in instruction "B."

For failure to instruct upon this view of the case, the judgment will have to be reversed and the case remanded for further proceedings.

So ordered.