## Chesapeake & Ohio Railway Company v. Hogg.

(Decided October 26, 1917.)

### Appeal from Lawrence Circuit Court.

1. Railroads—Crossing Accident—Negligence—Question for Jury.— In an action for injuries received in a railroad crossing accident, evidence considered and held that the question whether plaintiff was injured by the negligence of the defendant was for the jury.

2. Railroads—Crossing Accident—Care Required—Instructions.—In an action for personal injuries at a railroad crossing, an instruction telling the jury that it was the duty of the defendant to keep a reasonable lookout ahead for persons who were using the crossing, to give reasonable warning of the approach of the train and to have the headlight on the engine lighted, instead of telling the jury that it was the duty of the defendant to use ordinary care to perform these duties, is not subject to criticism on that account where the defendant failed to show any circumstance which rendered the performance of such duties either impossible or more difficult than usual.

3. Railroads—Crossing Accident—Instructions.—An offered instruction is properly refused where the question submitted is fully covered by a given instruction.

4. Trial—Instructions—Issues—Conformity of Issues.—Where the pleading in a personal injury action did not raise the issue that the plaintiff aggravated the damages by his own acts subsequent to the accident, it was not error to refuse an instruction submitting that issue.

M. C. KIRK, F. T. D. WALLACE and WORTHINGTON, COCHRAN & BROWNING for appellant.

A. T. BRYSON, JOHN W. WOODS and C. F. SEE for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

This is a personal injury action in which plaintiff, Charles Hogg, recovered of the Chesapeake & Ohio Railway Company a verdict and judgment for $2,000.00. The railway company appeals.

Plaintiff's account of the accident is as follows: He resided in Catlettsburg, but worked in Huntington, West Virginia, for the Ohio Valley Electric Railway Company. On the evening of December 3, 1913, he went to Kenova, West Virginia, in company with a boy by the name of Arnett, and shortly thereafter returned to Catlettsburg. While there he had two or three drinks of whiskey and a glass of beer. He and Arnett then went to the home of a family by the name of Yonts, who resided near Clyffeside. After staying there about thirty minutes he left for home. As he approached the Chestnut street crossing in the village of Normal, there was a freight train going west on the westbound track. As soon as this train passed, he started over the crossing. After crossing the westbound track and a passing track and while in the act of crossing the eastbound track, he was struck by an eastbound freight train and injured. The headlight on the engine was not burning and no warning of the train's approach was given. It was a dark night and he never knew of the train's approach until he was struck. In his opinion, the accident occurred between 10:30 and eleven o'clock, but he was not sure as to the time. His right leg was crushed and broken between the knee and the hip. His head was bruised and his left hip and left hand were also cut. After being struck he crawled fifty or seventy-five feet to a fire that was burning beside the railroad track and then lost consciousness. He was discovered near the railroad tracks about five o'clock the next morning, and was taken to the McKenzie home, near the crossing, and from there to the hospital. After remaining in the hospital about six weeks, he was removed to the home of his brother-in-law in Ashland, where he stayed for five weeks more, and then went to his home in Lawrence county. For three months he could not walk, and for eighteen months he was unable to work. He suffered a great deal for several months, and his right leg is now shorter than his left leg. At the time of his injuries, he was earning from $2.50 to $3.00 per day.

The testimony for defendant is as follows: Its train dispatcher testified that the only freight train that passed the scene of the accident on the night in question was Extra 819, and that this train passed Clyffeside Park about 10:03 p. m. The engineer and fireman, who were on that train testified in substance that that train did not collide with anyone as it passed the crossing in question. Lizzie Davis, who was at the Yonts home on the night of the accident, testified that plaintiff and Arnett came there about eleven or twelve o'clock. They had a quart bottle of whiskey with them. She heard plaintiff talking to Mrs. Yonts, in the next room, between three and four o'clock. It was after that time that plaintiff left. Arnett did not leave with plaintiff because he was drunk. She could not say that plaintiff was drunk, but he was drinking. Whether she told Mr. See, in the presence of Mr. Hogg, that plaintiff had left the Yonts house before twelve o'clock, she did not remember. Edd Bright, Fred Wellman, L. F. Meade, and Enoch Scarberry, who discovered plaintiff near the railroad track the next morning, all say that plaintiff stated that someone had knocked him in the head. Dr. Salmon, who took charge of plaintiff, and Mrs. McKenzie, to whose home he was taken, say that plaintiff first stated that someone had hit him, and after that, that he was struck by a street car. Later on, however, he stated that he had been struck by a Chesapeake & Ohio train. T. L. Dixon, who was in the same room with plaintiff at the hospital, also testified, that plaintiff first stated that he was struck by a street car and afterwards said he was sure he was struck by a freight train. The company's claim agent testified that when he went to the hospital, two or three days after the accident, plaintiff stated that he was so drunk that he didn't know what hurt him. Meade, Scarberry, Dr. Salmon, Dr. Allen, and Miss Callahan, the nurse who took charge of plaintiff when he was brought to the hospital, all gave it as their opinion that plaintiff was in an intoxicated condition. On the other hand, the witness Cordial, who helped to carry plaintiff to Mrs. McKenzie's house, gave it as his opinion that plaintiff was not intoxicated. Wellman, Bright and Mrs. McKenzie say that they noticed no smell of liquor on him.

The first ground urged for a reversal is that the verdict is flagrantly against the evidence. In this connection, stress is placed upon the following facts: Plain-

tiff claims that he was injured between 10:30 and 11 o'clock, when as a matter of fact, the only train that passed the scene of the accident, passed at 10:03, and the Davis woman testified that plaintiff did not leave the Yonts home until about 4 o'clock. Furthermore, the engineer and fireman on the train in question, testified that they did not collide with anyone. Not only so, but plaintiff himself gave several different accounts of how the accident occurred. In view of these circumstances, it is argued that the evidence is not even sufficient to show that plaintiff was injured by one of defendant's trains. It may be conceded that the facts relied on by the defendant do tend to show the improbability of plaintiff's story, but after all the case is one which turns on the credibility of the witnesses. It is clear from a careful reading of plaintiff's testimony, that he was not sure as to the time of his injury and did not intend absolutely to fix the time as being between 10:30 and 11 o'clock. It must also be remember that plaintiff was found with his leg broken in the immediate vicinity of the crossing where he claims the accident took place, and it is by no means probable that his leg was broken somewhere else about an hour before, and he then crawled or was carried to the place where he was found—a circumstance which the jury had the right to consider in determining whether they would believe plaintiff or the witness, Lizzie Davis. Indeed, there is no other reasonable theory as to how his injuries were brought about. Of course, the evidence of the engineer and fireman, that train 819 did not collide with anyone is not conclusive of the question, for not infrequently such accidents happen without the knowledge of the engineer and fireman. Under these circumstances, therefore, we conclude that it was for the jury to weigh the conflicting evidence and determine whether or not plaintiff's version of the accident was true.

Besides other instructions not necessary to set out, the trial court gave the following instructions:

"No. 1. The court instructs the jury that it was the duty of the defendant to keep a reasonable lookout ahead for persons, who were using the crossing at Chestnut street, mentioned in the evidence, to give notice of the approach of the train to the crossing, by ringing the bell or blowing the whistle far enough away from the crossing to give reasonable warning of the approach of the train to persons using the crossing, and to have the en-

gine headlight lighted; and if it failed in any of these duties, and by reason thereof, the plaintiff was struck and injured, they should find for the plaintiff, unless they shall find as set out in instruction number two.

"No. 2. The court instructs the jury that in using the railroad and street crossing, mentioned in the evidence, both parties were required to exercise the same degree of care; that it was the duty of the plaintiff to use such care as may usually be expected of a sober person of ordinary prudence under like circumstances, to learn of the approach of the train, and to keep out of its way; and, if he failed to exercise such care, and but for this would not have been struck, the defendant is not liable, although there was also a want of proper care on its part as set out in instruction number one."

Instruction No. 1 is assailed on the ground that it imposed on the railway company the absolute duty to keep a lookout to give warning of the train's approach, and to have the headlight on the engine lighted, instead of requiring the company merely to use ordinary care to perform those duties. This criticism is not well founded, for defendant failed to show any circumstances which rendered the performance of such duties either impossible or more difficult than usual. Indeed, an instruction in the language of the given instruction has often been approved or directed to be given under similar circumstances. Louisville & Nashville Railway Company v. Gardners' Adm'r, 140 Ky. 772, 131 S. W. 787; L. & N. Railway Company v. McNary's Adm'r, 128 Ky. 408, 108 S. W. 898; C. & O. Railway Company v. Warnock's Adm'r, 150 Ky. 74, 150 S. W. 29; C., N. O. & T. P. Railway Company v. Harrigan's Adm'r, 149 Ky. 53, 147 S. W. 942.

Complaint is also made of the refusal of the court to give the following instruction:

"The court further instructs the jury that if the plaintiff by reason of intoxication at the time he was injured failed to exercise such care for his own safety as might be ordinarily expected of a sober person of ordinary prudence in attempting to cross defendant's railway tracks at Chestnut street crossing, and by reason of such failure he was injured, the law is for the defendant and the jury will so find."

This instruction was properly refused, because the question therein submitted was fully covered by instruction No. 2, given by the trial court.

Lastly, it is insisted that the trial court erred in refusing an offered instruction telling the jury in substance to find for the defendant if they believed from the evidence that plaintiff's injuries were rendered permanent by his failure to take ordinary care of himself, after the accident. This instruction was properly refused because no such issue was presented by the pleadings. Cumberland Railway Co. v. Baird, 156 Ky. 255, 160 S. W. 919.

Judgment affirmed.