# McKnight's Administrator v. Louisville & Nashville Railroad Company.

(Decided January 25, 1916.)

## Appeal from Bell Circuit Court.

1. Railroads—Trespassers on Tracks—Duty Towards.—Railroad companies owe no duty to a trespasser upon its tracks, or premises, except to exercise ordinary care to prevent injuring them after their presence is discovered.

2. Railroads—Trespasser—Exceptions to Rule as to Duty to.—An exception to the rule above stated is that where the use of the track or property by the public is in a town, city, or thickly populated community, and is so great and of such long standing that a presumption will be raised as to the use being permissive by the company, in which case it is the duty of the company to anticipate the presence of persons at such places and to exercise ordinary care to discover their presence and prevent injuring them.

3. Railroads—Trespassers—Exception to Rule· Applies to Infants.— The exception above applies to the presence of an infant upon the track or right of way the same as to an adult, and where the proof shows that the place of the accident was in the country and away from any public or private crossing and not in any thickly settled communiy more than the average in rural sections, and that not exceeding thirty or forty persons use the track as a walkway per day, the presence of one upon the tracks under such circumstances does not convert him into a licensee so as to impose upon the railroad company the burden of keeping a lookout to discover his presence, or to anticipate his presence, or to use any precautions to give warning of the approach of the train, or to do anything except to exercise ordinary care to prevent injury to such one after his presence is discovered.

J. G. ROLLINS and CHARLES I. DAWSON for appellant.

METCALF & JEFFRIES and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On May 21, 1913, Elden McKnight, an infant about twenty-three months of age, was run over and killed by a train of the appellee, Louisville & Nashville Railroad Company, in Bell county, the accident occurring some time in the early part of the forenoon. The appellant, William McKnight, the father of the infant, having qualified as administrator of the estate of the latter, filed this suit in the Bell circuit court seeking to recover from

appellee thirty thousand ($30,000) dollars damages, upon the charge that the killing of the appellant's decedent was due to the negligence of the agents and servants of appellee in charge of the train, producing the accident.

The negligence upon which plaintiff seeks to recover are: (1) That the accident occurred at a place upon the appellee's track "which was continually and habitually used by a large number of the traveling public as a walkway, with the full knowledge, consent and acquiescence of defendant company," and that it was the duty of those in charge of the train to maintain a lookout, so as to discover the presence of persons upon the track at that place, and to keep the train under such control as to speed, etc., that it could be immediately stopped upon the discovery of persons upon the track, and that those in charge of the train negligently failed to keep a lookout or to give warning of the approach of the train upon the occasion complained of; and (2) it is alleged that those in charge of the train discovered the presence of the child upon the track in time to have prevented the accident and to have avoided the killing, but that they negligently failed to do so.

It will be necessary in order to have a proper understanding of the questions involved to make a brief statement of the facts. The track upon which the decedent was killed is a short line of railroad running from Pineville to a place called "Kettle Island," and it appears from the testimony that two trips per day are made in each direction over this road; one in the forenoon and the other in the afternoon, and the train sometimes is a mixed train, but on this occasion the proof largely preponderates that it consisted of three cars, a tender and an engine, and was traveling from Kettle Island towards Pineville on its regular forenoon trip at a speed of 25 miles per hour. There is a considerable curve in the track as the point of the accident is approached, which curve bears to the left when traveling towards Pineville. On the inside of this curve and between the public road running parallel with the railroad and the right of way is the dwelling house of appellant, and between the rear of his house and the right of way is a garden. At the rear of this garden which seems to open upon the right of way, there is a gap in the garden fence. The child which was killed was seen a short while before the accident by its mother in the house, but in some unexplained.

way it left the house and must have passed through the garden and through the gap at the rear thereof and strayed upon the railroad track. The appellant was at work in the garden and heard the roar of the train as it approached, and about that time he heard some noise which attracted his attention toward the child, and realizing its danger he rushed to the back of the garden and endeavored to attract the attention, as he says, of those in charge of the train by waving his hands, but he states that the fireman, upon whose side he was, was looking across towards some mountains and did not appear to see the appellant until it was too late to prevent the accident. The mother and an older sister of the deceased also discovered the perilous situation of the child within a short time after the appellant had discovered it, and they from within the yard likewise attempted by signals to attract the attention of the fireman, but with no better result than the effort of the appellant in this regard. None of these parties while endeavoring to signal to those in charge of the train went upon either the right of way or the track, nor indeed outside of the inclosures mentioned. Something like three hundred feet from where the accident happened and in the direction from whence the train was coming, and on the inside of the curve, was an apple tree on the right of way which obstructed the view of the fireman down the track to the point where the accident happened until this tree was passed. The engineer being on the outside of the curve could not see down the track as far as could the fireman, and the latter shows that he could not have seen the spot where the accident occurred until within three hundred and ten feet of it, and the engineer could not have seen the place until within sixty or seventy feet of it. The train was stopped just as the rear car had passed about ten or fifteen feet beyond the place where the child was struck. The fireman testified that after seeing the signals of the parties above mentioned, there was at least as much as a second of time elapsed before he discovered the presence of the child, and he immediately notified the engineer, who applied the emergency brake, shut off the steam, reversed the engine, sanded the wheels and did everything possible to stop the train. It is furthermore shown that when the presence of the child was discovered by those in charge of the train, the two were not exceeding a hundred and twenty feet apart.

The testimony of the fireman and engineer as to the place where they discovered the presence of the child and what was done thereafter to stop the train and the distance at that time between the child and the train is not contradicted by any one. Under this condition of the record, we find no basis for the second contention of the appellant as a ground for recovery.

It is strongly urged in this case that this accident occurred at a place, which on account of the travel upon, and use of, the railroad track as a footway, that the duty of maintaining a lookout to discover the presence of persons upon the track was imposed upon the railroad company, and that it comes within the exception to the universal rule in this State, that railroad companies owe no duty to a trespasser upon its track except to exercise ordinary care to prevent injuring him after his presence is actually discovered. In other words, it is claimed that under the facts of this case, the accident occurred in a thickly populated community, the inhabitants of which used the track as a footway to such an extent, and had been for such a length of time, as to impose upon the operators of trains, the duty of anticipating the presence of persons upon the track, and to further impose the duty of maintaining a lookout ahead in order to prevent injury to any one that might be thus trespassing upon the track.

The facts in regard to this are substantially the same, as told by all the witnesses. According to some witnesses, perhaps as many as some forty to seventy persons per day would use the track as a walkway, while other witnesses said that not exceeding fifteen persons would thus use it during a day. Some two miles or more towards Pineville from the place of the accident was a coal camp called in this record "Straight Creek," and a half mile or more from the scene of the accident and between it and Straight Creek was a flag station on the railroad named "Jenson." Something like the same distance from the scene of the accident in the opposite direction is another coal camp called "Kettle Island," and upon occasions, such as holidays, when both camps were not running from any cause, this travel upon the track might reach as high as forty to fifty persons per day. At other times it would be less. Towards Pineville from the home of the appellant where the accident occurred, and between that point and Pineville, are a couple

of school houses and the children going to school would sometimes use the railroad track as a walkway, but not so much at the place of the accident as further on towards Pineville.

The proof furthermore shows that within a radius of one-half or three-fourths of a mile from the place of the accident there are some twelve or fourteen houses; not all of them, however, are located upon the right of way, but upon roads running to different points through the country. Something like six hundred feet towards Kettle Island from the point of the accident was a road crossing the track, as was also another one some fifteen hundred feet or more beyond where the child was killed. There is neither a public road crossing nor private road crossing in the immediate vicinity of the accident. The track at that point runs through the country and it is not claimed that there is any town there, either incorporated or unincorporated.

Under these facts the question for determination is whether the case comes within the exception to the general rule which those in charge of the train owe to trespassers on the track. Appellant relies upon the following cases to sustain his position: Corder's Admr. v. C., N. O. & T. P. Ry. Co., 155 Ky., 536; Carter, Admr. v. C. & O. Ry. Co., et al., 150 Ky., 525; C. & O. Ry. Co. v. Dawson's Admr, 159 Ky., 296; C. & O. Ry. Co. v. Blankenship, 157 Ky., 699; C., N. O. & T. P. Ry. Co. v. Dickerson's Admr., 102 Ky., 560.

In the Carter case the decedent was killed in the yards of the company where some three hundred or three hundred and fifty people were employed and worked, and the yards were located immediately adjacent to the town of Russell in Greenup county, the inhabitants of which numbered fifteen hundred or more persons. At the place of the accident the track was not only constantly used by the employes around and about the yards, but there was likewise a path or pathway crossing the track at that point going from the ferry landing on the Ohio River across the railroad into a public road leading to another town called "Advance," about a mile away, and having a population of five or six hundred inhabitants. It was shown that this crossing of the tracks of the company had been constantly used for as much as thirteen years by the general public, and this court upholding the rule requiring a lookout at such places, said:

"If the use of the track by the public for crossing purposes was general, and acquiesced in by the railroad company, it was charged with notice of such use, and the trespasser became a licensee to whom the company owed a lookout duty, although the accident happened in the company's yard."

In the Corder case the facts were that the accident occurred in the village of Greenwood, it having a population of between one hundred and fifty and three hundred inhabitants. About fifty or sixty yards south of the depot in Greenup was a public road crossing, and about fifty or sixty yards north of the depot there was a footpath leading from one side of the railroad to the other used for various purposes, one of which was to get to a store located on the east side of the track, and it was shown that the public generally used this pathway. A freight train was occupying a side track and was across the public road and had thus obstructed it for some twenty or thirty minutes. The decedent being unable to cross the track over the public road went around in front of the freight train, the engine of which was near the pathway, and without any warning he was killed by a fast passenger train going north on the main line. The proof showed that those in charge of the passenger train did not see the decedent until he emerged from in front of the freight train on the side track, and at that time the passenger train was too close to him to prevent striking him. It was shown that no signals were given for this public crossing, which, as seen, was only about one hundred and twenty yards south of the place of the accident. It was held by this court in that case that the decedent had a right to rely upon signals being given for that crossing under the rule laid down in the case of Cahill v. Cincinnati, etc. Ry. Co., 92 Ky., 345, and that the pathway across the track had been in use by the public to such an extent and for such a length of time as to require the exercise of caution by those in charge of the train in approaching same, or at least that the facts justified the submission of this question to the jury. This court quoting from the Carter case, *supra,* said:

"The fact that the accident did not occur in an incorporated city or town cannot, of itself, affect the case; it is the nature and use of the crossing by the public that is to determine the applicability of the rule which

requires the lookout duty. C. & O. Ry. Co. v. Warnock's Admr., 150 Ky., 74.

"If the use of the track by the public for crossing purposes was general, and acquiesced in by the railroad company, it was charged with notice of such use, and the trespasser became a licensee to whom the company owed a lookout duty, although the accident happened in the company's yard.

"We think the facts in this case are such that the court should have submitted to the jury the question whether the pathway had been so used by the public in order that the jury might determine whether Carter was a licensee or a trespasser."

In the Blankenship case, the accident occurred within the city limits of the town of Nicholasville, the county seat of Jessamine county, and at a point between the passenger station of the railroad company and Hawkins' crossing, both in the city limits. It was shown that a great number of people daily traveled up and down the railroad track between these points and that this had been indulged in by the general public for a great length of time, and this court in determining the character of the use, as well as the extent of it, so as to have charged the company with taking precautionary measures to prevent injuring persons using the track at that place, said:

"What precautions may be necessary in a particular case will depend, to some extent, upon the character of the locality; and, although Blankenship may have been technically a trespasser, nevertheless, if the public generally, with the knowledge and acquiescence of the railroad company, had continuously used the track at that point, as a passway for such a period of time that the presence of persons on the track was to be anticipated by those running the train, the law imposed upon the company a lookout duty for the protection of those who thus used the track. * * * There was evidence in abundance tending to show a general use of the track at this point by pedestrians; and that being true, it was for the jury to say whether the use existed, or whether it was sufficient under the rule above referred to."

In the Dawson case, *supra*, the accident occurred not far from the depot in the town of Garrison, which was unincorporated but had between two hundred and three hundred and fifty inhabitants. About two hundred and fifty yards west of the depot a public highway crossed

the railroad tracks, one end of which went to the Ohio River and which was called Garrison Lane. The decedent had traveled this road to the railroad track from the ferry landing and found the crossing blocked by a freight train; she had started to the depot for the purpose of taking one of appellant's trains on that occasion, but on arriving at the railroad track she discovered that it was blocked by the freight train and she proceeded towards the depot by the side of the freight train until she reached the engine and crossed the side track in front of it and on to the main line, when she was struck by a fast passenger train and killed. Aside from this being in a village with the inhabitants stated, it was shown that the track at this point was daily used by one hundred or more people as a walkway in going to and from the depot to the ferry landing. The passenger train was running some fifty or sixty miles per hour, and the engine attached to the train blocking the public crossing, as well as another one beyond the depot, were each emitting steam and making considerable noise and there was considerable snow falling at the time.

This court said:

"In this case plaintiff shows that there were about 350 persons living in the town of Garrison. There was considerable travel between that point and the ferry landing. Persons going to and from the ferry landing to the depot used defendant's main track between Garrison Lane and the depot. The track was used daily by about 100 persons. The decedent was about 15 or 25 feet from the station platform, and from 75 to 90 feet from the depot building. Under these circumstances, it was proper to submit to the jury the question whether or not decedent was a trespasser to whom no duty was owing until after her peril was discovered, or a licensee to whom the defendant owed the duty of keeping a lookout and giving timely warning of the approach of the train."

In each of the cases considered the party injured was an adult and in all of them the accident occurred, not only in villages of a considerable number of inhabitants, but at points where the public generally had a right to cross or be upon the track. In the Blankinship case the accident occurred within the corporate limits of Nicholasville and at a point which the proof showed the public had been using as a passway for more than thirteen

years, and in the Dawson case the accident occurred near to the passenger depot in a town of 350 people and where the public had been using the road for many years, and upon the particular occasion the railroad had blocked the public crossing so that the decedent could not use it in pursuing her journey to the depot to become a passenger on one of the railroad company's trains.

Manifestly the facts in those cases are entirely different from those in the instant case. As we have seen, this accident occurred in the country where the community was not very thickly settled. There was neither a public nor private crossing near to the place of the accident, and to hold that the use of the track as shown in this case would impose upon those in charge of the company's train the burden of observing the exceptions to the rule upheld in the cases referred to, would not only ignore and destroy numerous decisions of this court, but would result in practically destroying the efficiency of railroads in conducting and transacting the business for which they are constructed and operated. The public generally demands of such companies rapid transportation, both of passengers and freight, and to require them to anticipate the presence of persons upon the track, who are trespassers thereon, at any and all points along their line, in rural communities, and to be on the lookout for such, and to have their trains under such control as to be able to stop or check the speed so as to prevent an accident, would virtually destroy their utility and their usefulness as common carriers. Such is not the law as has been announced by this court in a vast number of cases. Willis' Admr. v. L. & N. R. Co., 164 Ky., 124; L. & N. R. Co. v. Logsdon's Admr., 118 Ky., 600; Harbeson v. L. & N. R. Co., 127 S. W., 757; C. & O. Ry. Co. v. Montjoy's Admr., 148 Ky., 279; Toner's Admr. v. South Covington & C. Street Ry. Co., 109 Ky., 41; Canal Co v. Murphy, 9 Bush, 522; L. & N. R. Co., etc. v. Davis, 162 Ky., 572; C. & O. Ry. Co. v. Nipp's Admr., 125 Ky., 49; C. & O. Ry. v. Warnock's Admr., 150 Ky., 75; Given's Admr. v. K. C. Ry. Co., 12 Ky. L. R., 950; McDermott v. K. C. Ry. Co., 93 Ky., 408; and many others which could be cited.

In the Logsdon case, *supra,* the person killed was a child under three years of age who had strayed upon the railroad track from a nearby section house, its father being a section hand and occupying the house, and there might in such cases be room for the anticipation of chil-.

dren of the section hands occupying these houses, which are always in clusters, sometimes playing upon the track, still this court denied the right of recovery therein upon the ground that while the child could not be guilty of contributory negligence, yet it was a trespasser so far as the railroad company was concerned, and that those in charge of the train owed it no duty to be on the lookout to discover its presence. The case clearly shows that there is no difference in this regard as to whether the trespasser is an adult or an infant.

This court upon the question being considered *inter alia*, says:

"Neither an infant under three years old nor an idiot can be held liable for a trespass or charged with contributory negligence. If either of them strays on the premises of another no blame attaches to him; but if, while there, and at a place where the presence of strangers is not to be anticipated, he gets hurt, the owner of the premises is not responsible for his injury, when he does not know of his danger in time to avoid it by the exercise of ordinary care after his peril is discovered. He is not chargeable with negligence in not maintaining an outlook, for this is not required if the presence of others is not to be anticipated. If the defendant here were a farmer or a manufacturer, and a three-year-old child had strayed upon the premises at a point where the presence of others was not to be looked for, and had been run over because he was discovered too late, would is not be conceded that this was simply an unfortunate accident, or would it be maintained that a recovery should be had because a lookout had not been kept? A railroad company has the exclusive possession of its right of way, and stands just as the owner of any other premises, so far as strangers coming upon it are concerned. At ordinary places along the track the presence of persons on the right of way is not to be anticipated, and therefore no lookout for them need be maintained. Every action of negligence rests on a breach of duty. If there has been no duty broken, there is no wrong and there can be no recovery. An infant three years old or an idiot can no more recover than an adult, unless there has been a breach of duty on the part of the defendant; and he can no more complain than an adult that a lookout was not kept at the place where the presence of persons was not to be anticipated. If infants were made an exception to the rule, and railroad companies were required to

keep a lookout for them at all places along their track, on account of their helplessness, the same principle would have to be applied to idiots, lunatics, epileptics, the deaf, the blind, and the like. This would destroy the rule and make it inconsistent with itself, for, if the presence of no persons is to be looked for on the track, the presence of persons infirm or unable to take care of themselves is not to be anticipated, and the defendant can not be required to guard against a danger which is not to be anticipated by a person of ordinary prudence.''

In the Willis case, *supra,* the person killed was an adult. The accident occurred at a place nearer to a town and to a public crossing than was the place of the accident in this case. It was shown by some of the witnesses therein that the daily number of persons passing up and down the track at that point was as many as 125, and that a number of farm houses were located up and down the track above and below the place of the accident. This court, however, refused to apply the exception to the rule as to the duty which the railroad company owes to trespassers upon its tracks, and in doing so said:

''The remaining question is, were the conditions and the travel on the track at the place where decedent was struck such as to put upon the railroad company the duty of anticipating the presence of persons on the track and the duty of exercising the corresponding care required when the duty exists? The place where decedent was struck was out in the country. It was not within the limits of any incorporated town or city or in a populous community, nor was the volume of travel on the track sufficient to convert persons using it into licensees to whom the duty of warning and lookout would be owing.

''If, under the facts of this case, a railroad company would be under the necessity of treating persons on its track as licensees, there would scarcely be a mile of track on any railroad in the State to which this duty would not apply. The decedent lived a half mile from the little station of Benton, at which place there were three or four houses. On the side of the railroad on which he lived there was only one house between his residence and the depot, and on the other side of the track and between it and the turnpike there were only three houses, although on the far side of the turnpike from the railroad there were three other houses. In short, there is hardly a half mile of track on any old railroad in the State, on which there are not

as many houses and as many people living as there were between Benton and the residence of the decedent. It is true there was evidence by perhaps one or more witnesses to the effect that as many as 125 people used these tracks every day, but other witnesses, with equal opportunities of knowledge, said the number of persons would be probably 15, except on some special occasion, when there was unusual travel. But if the number should be placed at 125, this would not be sufficient under the conditions surrounding this territory to convert these users into licensees, as it seems perfectly apparent from the undisputed evidence as to the number of people in the territory adjacent to the railroad and around and about Benton and the residence of decedent, that it is not what would be called a populous community in the law controlling this subject. It also seems preposterous to say that as many as 125 persons a day in a community like this would travel back and forth on the railroad track. It is, however, entirely probable that the few persons · who lived near these tracks used them daily, or whenever they wanted to go any place; but so do people all over the State who live near railroad tracks in the country use them as highways. The persons who use these tracks seem to think they have the right to do so, although they can not help knowing how dangerous it is, and that they take their lives in their hands every time they put foot on a railroad track in the country where many trains are running at high speed, and under no general duty to keep a lookout for or give warning to trespassers.

"This unlawful use of railroad tracks and premises has caused the death of many persons, and as a consequence great numbers of cases dealing with questions like the one here presented have come before this court. In these cases we have endeavored to lay down some satisfactory rule to distinguish licensees from trespassers, but on account of the varying facts of almost every case it has been found necessary to make distinctions that are sometimes not easily reconciliable with the principles of law applicable. We think, however, that it has been uniformly ruled under facts substantially similar to those presented in the record that the decedent in this case should be treated as a trespasser."

It would serve no useful purpose to analyze the testimony in all of the other cases referred to, because the law as to the duty which a railroad company owes to

trespassers upon its tracks, as well as the exception thereto, are each long and well established principles and rules and to depart from them now would involve a complete ignoring of the doctrine of *stare decisis,* by which we are to be governed in such cases.

We have not overlooked the fact that the appellant calls our special attention to the case of C., N. O. & T. P. Ry. Co. v. Dickerson's Admr., 102 Ky., 560, the facts in which it is claimed are on all fours with the facts in the instant case, and it is claimed that the opinion therein upholds appellant's contention, and compels a reversal of the judgment. The facts in that case, however, are different in some respects from the ones with which we are dealing here. The track was straight for a long distance from the child which was killed in the direction of the approaching train, and the mother in her efforts to stop the train had gotten upon the right of way, or track, and her movements in attempting to give the signal were of such a frantic and exciting character as to inform those in charge of the train that something more than the ordinary was about to occur, and if they had recognized this fact as they should have done, they perhaps would have discovered the presence of the child in time to have prevented the injury; but howsoever this is, we have examined the authorities referred to in that case and they do not justify the conclusions reached by the court. There will be found, in them, instances where the accident occurred at crossings, either public or private, or other places requiring the application of the exception to the rule as to trespassers hereinbefore considered.

This, and all like cases, are indeed sad ones, and if the human side of the court only had to deal with them a forgetfulness of the law might say to permit a recovery, but as we have seen, there is no difference in the rule, whether adults or infants are involved, and howsoever much sympathy for the innocent child may be engendered in the breast of the court, it furnishes no reason for disregarding the plain and well established mandates of the law as applicable to the facts. We have given the facts herein, as well as the law applicable to them, careful consideration, and we are unable to see that the court erred in giving the peremptory instruction to find for the defendant.

The judgment is affirmed.