## Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Smith's Administrator.

(Decided January 28, 1916.)

### Appeal from McCreary Circuit Court.

1. Trial—Peremptory Instruction.—A peremptory instruction to find for a defendant is not authorized, at the close of plaintiff's evidence, unless, after having admitted the truth of the evidence conducing to support plaintiff's cause of action, and every reasonable deduction from the facts established by such evidence, there is yet no evidence to support his cause of action.

2. Negligence—Personal Injuries—Evidence.—Where the evidence offered conduces to prove acts of negligence by the defendant, which resulted in injury to plaintiff, a peremptory instruction to find for the defendant, at the close of all the evidence, is not authorized, unless the proof of the facts, which are asserted to show the contributory negligence of plaintiff, is undisputed, and the facts being admitted, they are such that men of like intelligence and judgment will not draw different conclusions from them.

3. Railroads—Notice of Presence of Workmen on Track—Lookout.— Where an independent contractor is doing construction work for a railroad company, and has in his employment a number of men, whose duties take them upon the railroad track, and in close proximity to it, the railroad company is charged with notice of their presence, and it is the duty of the employes of the railroad company, in the operation of the trains, to anticipate the presence of such workmen upon the track and in dangerous proximity to it, and to exercise ordinary care to avoid injury to them, by giving reasonable warning of the approach of the trains, to operate the trains at a reasonable rate of speed, and to keep a lookout for the presence of such workmen upon the track, and to have some person in a position to control the train, when passing the place at which the work is being done.

TYE, SILER & GATLIFF, EDWARD COLSTON and JOHN GAL-VIN for appellants.

DENTON & FLIPPIN for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

On the 10th day of August, 1912, William Smith, a youth of seventeen years of age, was run over and killed by one of the trains operated by the appellant, Cincinnati, New Orleans & Texas Pacific Railway Company and its engineer, Samuel Bryant. James A. Smith, the administrator of decedent, instituted this suit in the Mc-Creary circuit court against the appellants to recover

the damages to his estate, which were alleged to have arisen from his death. The facts of the occurrence are substantially as follows:

"From a quarter to a half mile south of Greenwood the appellant's track passes through two cuts, which are from thirty-five to forty feet in depth. The two cuts are separated by a ravine and are just fifty feet apart. For three months before the death of decedent the appellant railroad company was engaged in widening these cuts so as to admit of laying down another track alongside of the original track. The Mason & Hanger Construction Company was performing this work under a contract with the railroad company. The construction company held the attitude of an independent contractor, and was answerable only to the appellant for the final result of the work. There were several gangs of men engaged in working, each of which operated under a foreman in the employ of the construction company. Two of the squads of men worked in the day and two of them worked in the night. A squad was engaged at all times, both day and night, in working in the north cut or the one nearest to Greenwood, and a similar squad was engaged in a similar way in working in the south cut or the one farthest from Greenwood. The widening of the track was done upon the east side of the cuts and was performed by the construction company's employes, by blasting and other methods, reducing the ground, upon the east side of the cut, for a sufficient width to lay down another track, to the level of the original track. To do this, they would remove a depth of about eight or ten feet of earth from one end of the cut to the other. At the time of Smith's death the north cut had been widened, down to within eight or ten feet of the level of the original track, except for a short distance upon the south side end. Proceeding from Greenwood, the roadbed extends in a straight line through the first cut and substantially a straight line for about two hundred feet through the second cut, where it makes a gradual curve to the eastward until it passes out of the south cut. Each of the squads of men consisted of from seventeen to twenty men. In performing the work of widening the track, blasting materials were used and oftentimes resulted in obstructing the railroad track with stone, slate and dirt. It was the duty of the construction company to keep the track clear as much as possible, so as not

to obstruct the passage of trains, and when the road would become obstructed in one of the cuts, the foreman in charge of the work at that point would send a man out on the track to the southward and one to the northward to stop any train which might be coming in either direction, by giving them a signal of the danger, and at the same time he would summon the squad working in the other cut to come to his assistance in removing the obstruction from the track. In the north cut, as it originally was, there was a ditch upon each side of the track and a space of several feet between the end of the ties and the wall. In widening the track, these ditches had become filled with dirt and stone, and on the west side of the south cut and extending about one hundred and fifty feet from the exit at the south end of the cut, this stone and dirt was piled up against the west wall of the cut to a depth of eight or nine feet and extending at an angle of about forty-five degrees down to the edge of the track. Between three and four o'clock in the morning a blast was made in the south cut, which tore down such a quantity of stone and dirt that the track at that point was obstructed. When this occurred, Norman, the foreman of the work at that place, directed the decedent, Smith, who was one of the men working in that squad, to proceed to the north, with directions to flag any southbound train. At the same time, he sent a man to the south of the cut to flag any north-bound train, and likewise summoned the squad, which was engaged in the north cut to come to his assistance, which they immediately did, except that the foreman in charge of the work in the north cut left a colored man to watch over and take care of the mules, which were being used in the work at that point. The colored man and the mules were upon the bank on the east side of the cut, which was about ten feet above the level of the track, and about thirty-three feet from the south end of the north cut. The decedent provided himself with two lanterns, one of which gave a white light and the other a red light, to be used in warning any south-bound train, and proceeded from the place of the obstruction, in the south cut, into the north cut, thirty-three feet from its south end, where he stopped and set the two lanterns down between the rails, upon the track, the lantern which gave the red light being situated nearest to the south end of the north cut. He there leaned back against the sloping bank upon

the west side of the track and engaged in a conversation with the colored man, who was upon the opposite side upon the bank about ten feet above him, and, also, while there smoked two cigarettes, one of which he had just finished smoking at the time he was killed. After the two squads of men had been engaged for about three-quarters of an hour in removing the obstruction from the track in the south cut, a passenger train, with five coaches and engine, came from the south, when the flagman sent out by the foreman on the construction work in the south cut, signalled the train and it slowed down and stopped before arriving at the obstruction. The engineer upon this train then blew a signal with the whistle for his own flagman to go to the south and protect the rear of his train from any train coming from the south. After the train had been there for about fifteen minutes the obstruction was removed, except a large sand stone, which had fallen very near the track, and the men, after knocking off the projections from it, which they thought would interfere with the passage of the train, informed the engineer that they thought he could pass it by proceeding very slowly. The engineer then called in the flagman to the train by a long blast upon the whistle, upon the engine, and after the flagman had arrived and gotten upon the train, the train proceeded to move very slowly, at a rate of speed of probably three or four miles an hour on past the sand stone, while foreman Smith stood by the stone to signal him in the event of the train coming in contact with it, and when it passed the stone, he then signalled the engineer that the train had passed the stone. It was about nine hundred feet from where the obstruction on the track was to the point where decedent was and down grade all the way. The evidence for the appellee is that the train approached the place where the decedent was at the rate of from three to four miles an hour, while the evidence for the appellants is that by the time the train had arrived where decedent was, it was moving at from ten to twelve miles an hour. The evidence for appellee is, that after starting from where the train was standing, before the obstruction was removed, and from there on to the point where decedent was, there was no warning of any kind of the approach of the train, by either whistle or bell, and the evidence for the appellee is that the bell was constantly ringing. The evidence for ap-

pellee is, in substance, that the train approached the decedent so quietly, and to him so suddenly, that he did not discover it until it was immediately upon him, and although he endeavored to do so, he was not able to escape from it and was run over by the train, both of his feet and hands being cut off and his head crushed and he was instantly killed. In addition to the red and white lanterns, which the decedent had set between the rails of the track at the point where he was, there were, also, located at that point four oil torches, which were used for and sufficient to make light for the squad of men engaged in the work at that place.    The evidence for the appellants is, by the engineer, that he was looking backward toward the sand stone beside the track to observe the signals to be given him in the event of the train colliding with the stone and when he should pass it safely, and when he had received the signal that the train had passed, he sat up in the cab and looked before him upon the road, but that he did not see the decedent, nor did he observe the light between the tracks, neither did he see any other light, except a white light upon the bank, and the first he knew any tragedy had occurred was when, after passing the point where decedent was struck by the train, that the fireman said to him that they had hit something or run over something, when he immediately stopped the train and the fireman proceeding to the rear of the train, found the decedent lying in the ditch beside the track. The fireman, who, when a lookout duty is required, is so often engaged in replenishing the fire, was engaged in this occupation after the obstruction was passed, and saw nothing upon the track of any kind.    It should also be stated that the ditch on the west side of the track in the north cut had been cleaned of its obstruction, to within a short distance of where decedent was struck by the train, and the evidence is contradictory as to whether or not there was room sufficient for him to stand beside the track, at the point where he was killed, between the track and the wall and escape a passing train.    The colored man who saw the train when it approached decedent, testified that he did not see or observe the train and did not know of its approach until it was immediately upon the decedent, and so close to him, that although he endeavored to escape, he was not able to do so.    The engineer excuses his failure to see the decedent, at the point where he was

struck by the train, by stating, that after the train had passed to the end of the curve from the point of the obstruction upon the track, that the rays of light from the headlight of the engine were cast beyond where decedent was. The proof showed, without contradiction, that the engineer upon appellant's train knew and had known for two or three months past, that the men were engaged in doing the work named above, and were there at both day and night, and were using the tracks in passing to and fro about their work, and on several occasions trains operated by him had to wait until obstructions were removed from the track, and that it was the custom of the foreman of the construction company to send a man in each direction to warn trains of any obstructions placed upon the road by him in his work. He was, also, acquainted with the fact that the work was being done by these men upon both of the cuts at the same time.''

The case coming on for trial, resulted in a finding by the jury in favor of appellee of the sum of $6,000.00 in damages. A motion for a new trial having been overruled, the appellants seek a reversal of the judgment upon the sole ground that the court below erred in overruling its motion for a direct verdict by the jury in their favor, at the conclusion of the evidence for appellee, and at the conclusion of all the evidence. This is the only alleged error upon which the appellants rely for a reversal, and is the only one which is necessary to be considered upon this appeal.

To have authorized a peremptory instruction to find for appellants at the close of the evidence for appellee, it must have appeared, that after having admitted the proof of all the facts which conduced to support the cause of action by appellee to be true, and every reasonable deduction from such facts, there was yet no evidence showing negligence on the part of appellants.

To have authorized a peremptory instruction for appellants, at the close of all the evidence, where the evidence conduced to prove negligence on the part of appellants, the proof of the facts upon which the contributory negligence of appellee was asserted, must have been uncontradicted, and when admitted to be true, must have been such, that when, under consideration, men of like intelligence and judgment would not arrive at different conclusions from such facts. In other words, the ad-

mitted facts must show that but for the contributory negligence of decedent he would not have been killed.

The above doctrines are elementary, in this jurisdiction, and must be adhered to in arriving at a determination of the alleged errors in this case, because it is fundamental, that whenever evidence is introduced, the weight of which it is the province of the jury to determine, the court is not authorized to arbitrarily invade the province of the jury and to determine the weight to be given to the evidence itself. It is also fundamental, that in trials by jury, while it is the province of the court to determine the law of the case; the jury, where the proof is contradictory, must weigh the evidence, determine the credibility of the witnesses, and find from the evidence what the facts are.

It is so well established in this jurisdiction that it is useless to cite precedents or authorities, that where, in the exercise of ordinary care by the persons who are operating railroad trains and engines, the presence of persons upon the tracks of the railroad must be anticipated, that it is the duty of the persons in charge of the train to give warning of its approach, move it at a reasonable rate of speed, and keep an effective lookout for the presence of persons upon the track, and have some person in such a position that he can control the movement of the train. To a mere trespasser upon the track of the railroad, neither the railroad nor its employes owe any duty, except to exercise ordinary care for his safety, after they have knowledge of his presence upon the track. The duty to keep a lookout for persons upon the track, and to give reasonable warning of the approach of a train, and to operate it at a reasonable rate of speed, is incumbent upon the employes of railroad companies, not only at public crossings and at populous places, where the presence of persons must be anticipated, but where licensees and persons, by invitation of the railroad company, are upon or about the tracks, it becomes the duty of the railroad company to exercise ordinary care for their safety. The decedent was an employe of the Mason & Hanger Company, and engaged in construction work of the appellant railroad company. The work on the two cuts had been in progress, both day and night, for a period of two or three months, and was engaged in by seventy-five or eighty men, whose duties called them to frequently cross and

to be upon the track and to be in dangerous proximity to it a very considerable portion of their time. They were not, in any sense, trespassers, since they were there in performance of the very work which the railroad company had contracted with their employer to do. The railroad company was charged with notice of their presence, and the appellant, Bryant, as engineer, had actual notice of their presence. The decedent had, under directions of his foreman, gone forward to perform the duty of flagging any train which might come to the place of the obstruction from the north, and to effectively do this he was required to be upon the track and to signal a south-bound train by waving a lantern across the track. The engineer admits that he knew that some person should be upon or near the track to the north of his train for that purpose. Under the circumstances stated, the railroad company and its joint appellant, as engineer, owed the duty of giving reasonable warning of the approach of the train, and of keeping a lookout for the employes of the construction company, who might, for any purpose, connected with their duties, be upon the track or in dangerous proximity to it. The warning should be given and a reasonable rate of speed maintained for the purpose of enabling employes of the construction company, if in a perilous situation, to betake themselves to a place of safety, and the lookout should be maintained so that the train might be stopped and the lives of those saved who might be in situations of danger, and from any reasons had failed to hear the signals or to see the approach of the train. L. & N. R. R. Co. v. Gamble's Admr., 156 Ky., 91; C., N. O. & T. P. Ry. Co. v. Winningham's Admr., 156 Ky., 434, 33 Cyc., 809; 23 A. & E. Ency. Law, 738.

The evidence offered, which shows that when the train was flagged to the south of the south cut, the speed of it was checked and when it came to a stop before the entrance of the south cut from the south, it called out the flagman by four blasts upon the whistle, to protect the rear of the train, and after the obstruction was removed, it, by a blast of the whistle, called in the flagman, and that these signals could have been heard by decedent, but after the train began to move through the south cut, and on to the place where decedent was killed, no signals of approach were given, except the engineer and fireman testify that the bell was ringing, which is denied

by all the other witnesses, or else they failed to hear the bell, with equal opportunities with the engineer and fireman to hear it.   The engineer and fireman knew that the work was going on in the north cut, as well as the south, and the presence of the employes of the construction company should be anticipated there, and assuming, as we must upon a motion for a peremptory instruction, that no warning was given by the bell, and that no warning was given by the whistle of the approach of the train to the north cut, it was a question for the jury to determine, as to whether or not a reasonably sufficient warning was given decedent of the approach of the train. The evidence for appellee strongly conduces to prove that the engineer was either not maintaining a lookout, or else that he saw the perilous situation of decedent and made no effort of any kind to avoid injury to him. Upon a motion for a peremptory instruction, admitting the evidence of the facts upon which the negligence of appellants is based, and the reasonable deductions from same, to be true, it would necessarily be concluded that appellants were guilty of two distinct acts of negligence, the one in not giving any warning to decedent of the approach of the train, and the other in not maintaining a lookout for him.   It is insisted that although it should be held that the appellants were guilty of negligence, that the decedent was likewise negligent, and that but for his own negligence he would not have lost his life, and for that reason the peremptory instruction should have been given.   It is insisted, in the first place, that decedent had permitted himself to go to sleep upon or near the track, and that so doing was such contributory negligence as to entirely defeat his action.   There is no evidence proving that he was asleep at the time of his death, except mere inference, and this is contradicted by evidence to the contrary.   It is insisted that he knew that the train would pass upon the track, and with this knowledge took a position upon the track at a place, where, in the event of the train passing, it was impossible, on account of the close proximity of the debris to the track, for him to escape; that he could have found a short distance beyond where he stopped a place where the train could have passed him in safety; that he could have, by the exercise of ordinary care, known of the approach of the train, as his sight and hearing were unimpaired, and that he could have

seen the headlight and heard the noise of the movement of the train and betaken himself to a place of safety; that he was sent to perform the duty of a flagman, and it was his duty to have seen and known of the approach of the train, and that, all in all, he failed to exercise ordinary care for his own safety, and that failure was the cause of his death. The evidence as to the proximity of the debris to the track at the point where decedent was killed, and as to the train making a noise by its movement or having light sufficient to attract his attention at the time and place where he was, was not uncontradicted. The decedent had a right to assume that the appellants would do their duty by him by giving warning of the approach of the train and by keeping a lookout for him. Although he may have heard the signalling for the flagman when the train was at the south end of the south cut, and knew or believed that at some time the train would come forward to the place where he was, he had a right to expect and assume that when it did so, he and the other employes of the construction company, who might be in the north cut, would have warning of its approach, as he knew that the track, at least for a time, in the south cut, was impassable. The decedent was not an employe of the railroad company and had been sent to do the specific duty of looking out for and warning south-bound trains of the obstruction. He had no duty to look out for a north-bound train, except the duty of exercising ordinary care for his own safety, and to keep out of its way. Without doubt, it was his duty to exercise ordinary care for his own safety, and to employ his ears and eyes for that purpose, but there is evidence to the effect that the train came on, down grade, so noiselessly and without giving any warning, and under the circumstances it might be inferred, unexpectedly, that it was so close to decedent when he discovered it, that he could not escape, though he endeavored to do so. The evidence fails to show, without contradiction, that he failed to exercise that degree of care for his own safety that an ordinarily prudent person is accustomed to make use of under circumstances similar to those proven in this case. The facts upon which it is insisted, that it is proven that he failed to use ordinary care for his own safety, if admitted as true, men of equal intelligence and judgment would probably reach different conclusions from them, and in such

state of case, as to whether or not he exercised ordinary care for his own safety, is a question for the jury.

It is therefore concluded that the court was not in error when it overruled the motion of appellants for a direct verdict, and the judgment is therefore affirmed.