## Illinois Central Railroad Company v. Pierce's Adminstratrix.

(Decided May 8, 1917.)

### Appeal from Caldwell Circuit Court.

1. Railroads—Duty to Maintain Lookout.—In the absence of statutory regulation, the duty of a railroad company to maintain a lookout for persons using its tracks and premises depends upon whether or not their presence must reasonably be anticipated, and this applies to employes as well as members of the general public, except where the employee, or one on the railroad company's tracks with its knowledge and consent, is one whose duties are such as to divert his attention from passing trains.

2. Master and Servant—Negligence of Railroad Brakeman—Lookouts.—Decedent, a sub-brakeman, had written to the railroad company for a pass, so that he might go to another town to transact some private business. The railroad company maintained a yard office, situated in the country some distance from the town, at which employes were permitted to get their mail. The evidence showed that from twelve to fifteen employes, whose duties were such as to require them to look out for passenger trains, used the tracks between the yard office and town twice daily. Decedent went to the office on Sunday to get his pass, and while walking away from the office toward the city was run over and killed by a passenger train. Held: That the company owed him no duty of lookout.

JOHN C. GATES, BLEWETT LEE, R. V. FLETCHER and TRABUE, DOOLAN & COX for appellants.

JOHN G. MILLER, ALBERT MORSE and R. M. HOLLAND for appellee.

OINION OF THE COURT BY JUDGE CLARKE—Reversing.

W. D. Pierce was employed as a flagman, for a year prior to his death, by the Illinois Central Railroad Company, working on freight trains into and out of Princeton, Kentucky, where he resided. He did not have a regular run, but worked only irregularly and at intervals, as a substitute when for any reason the regular flagman was unable to work. To supplement his earnings, he had accepted employment, for such time as he was not employed by the railroad company, to solicit insurance for a fraternal order.

About a mile and a half west of Princeton, the railroad company maintains an extensive yard, just east

of which, and a few feet south of one of its main tracks, there is a small building, called the block-house or yard office, at which the company maintains a telegraph office, attended by an operator, and in which is provided by the company, for the use of its employes, a register of its trains and trainmen, and a series of small boxes, in which is placed mail and orders directed to employes.

A few days prior to his death, Pierce had written to the railroad company a request for passes for himself and wife, so that he might go to Marion, Kentucky, in connection with his insurance business, and his wife to Central City for a visit. About noon, on Sunday, October 24, 1915, desiring to use the expected passes on the next day, Pierce left his home in Princeton and went to the block house to get his mail, where he arrived shortly before one o'clock, got some mail, and left the office at a door opening toward the south. He then walked west on the office platform, to the western end of the building, and north across the western end, to the northern line of the building, where he left the platform, and was last seen alive, by the telegraph operator, walking between the office and the railroad tracks in the direction of Princeton, with his head down as though reading something he had in his hand, presumably some of the mail he had just received. The operator's attention was then directed to an approaching through passenger train, from the west, also going toward Princeton, which struck and killed Pierce, at a point about thirty-five feet east of the office, as he stepped upon the railroad track in front of the approaching train in ignorance of its approach. Neither the engineer nor the fireman saw Pierce until after he was struck by the engine.

To recover for his death, his wife, who was appointed his administratrix, filed this action, alleging that, at the time of the accident, the Illinois Central Railroad Company, through its agents and employes, was operating its train at a high, dangerous and reckless rate of speed, and negligently drove said train and engine upon and against her intestate; that the place of the accident was very much frequented by the company's employes, and others, whose occupation and business with the company called them there; that decedent, at the time of his death, was there on business with, and by invitation of, the Illinois Central Railroad Company, and his death resulted from the company's negligence in failing to provide proper means of ingress and egress to and from said office, and

in negligently operating its trains at said place. The Illinois Central Railroad Company, as lessee, and the Chicago, St. Louis & New Orleans Railroad Company, as owner and lessor, of the railroad tracks, were made defendants, as were W. B. Curley, engineer, and R. C. Ludlow, fireman, in charge of the engine that killed Pierce.

The defendants, in separate answers, traversed the allegations of the petition, and plead contributory negligence.

The trial resulted in a verdict and judgment in favor of plaintiff, against all of the defendants, in the sum of $7,500.00, and the defendants have appealed, setting up as errors entitling them to a reversal:

First, the refusal of their request, at the conclusion of plaintiff's testimony, and again at the conclusion of all the testimony, for a peremptory instruction; second, the refusal of the court to give three instructions offered by the defendants; third, that the instructions given by the court were erroneous; fourth, the admission of incompetent evidence offered by plaintiff; and, fifth, that the verdict and judgment are not supported by, and are flagrantly against, the evidence.

1. The principal question involved upon this appeal, and the first question to be decided, is, whether, at the time of the accident, decedent was a trespasser, a licensee, or upon the railroad track as a member of the general public, at the place where the accident occurred, at the company's invitation. Counsel for appellant insist that he was a trespasser, to whom no duty of lookout or warning was due, while counsel for appellee are equally insistent that decedent was upon the railroad tracks, when he met his death, as a member of the public upon the invitation of the company, or, at least, as a licensee, to whom the defendants owed the duty of lookout and warning.

It is perfectly clear, from the uncontradicted evidence of appellee's witnesses, that decedent, upon a purely private mission of his own, and not in the discharge of any duty as an employe, had gone, upon the occasion of the accident, to the yard office, maintained and used by the company solely for its business with its employes in the operation of its trains. It is also conclusively shown that members of the public were not invited there for the transaction of business by the company, and that no such use of the office, or of the company's tracks at or near

the office or the place of the accident, was exercised by the public. Such employes as were in the habit of using the company's tracks in going to and from the office, did so in going to and from their work, and, at such times, are, under the decisions of this court, held to be engaged in their duties as employes charged with the assumption of the risks of their employment. L. & N. R. Co. v. Walker's Admr., 162 Ky. 209.; Sandy Valley & Elkhorn Ry. Co. v. Bridgman, 168 Ky. 219.

Decedent was not, then, at the time of the accident, upon the company's premises as an employe; neither was he a trespasser, in the common or ordinary meaning of the term, because of the fact that the company had placed in one of the boxes in the office, for delivery there to him, a letter, not connected with its business, but upon maters purely private to decedent; and it will be assumed that, by so doing, the company had granted to him permission to go upon its premises at the time of the accident, to get the letter, although it is not entirely clear that such permission was granted to him, except as an employe, and at such times as, in the discharge of his duties, it was necessary for him to go to the office. Viewed in the most favorable light to appellee, decedent was, upon the occasion of his death, upon the premises of the company as a member of the public, a bare licensee, and, as such, the company owed him the duty of lookout and signals only if the tracks at that place were habitually used by a sufficient number of persons to make the company anticipate their presence there.

The only use shown of the tracks, at or near the place of the accident, is that some twelve or fifteen employes, who were members of freight crews, were twice daily, upon the tracks connecting the yard office and the city of Princeton, in going to and from their work, to whom the company owed no duty of lookout in the operation of passenger trains, for it was part of the duty of the freight crews, while at work and in going to and from work, to keep out of the way of and give a clear track to passenger trains, such as killed decedent, having the right of way over the freight trains; so that, so far as the evidence in the case goes, decedent was the only person who, as a licensee, had any permission to use, or did use, the company's tracks at or near this place, and the permission was for but a single trip, or, at the most, upon infrequent occasions.

It is only where licensees or employes use the company's tracks habitually and in such numbers that the company must anticipate their presence, that a duty of lookout follows, except under peculiar circumstances hereinafter noticed. No such duty devolves upon the company for a single licensee, for a single trip or occasional trips, that may be exercised at any time.

In many decisions of this court and other courts the term "licensee" is used to designate members of the public who are upon the premises of railroad companies at a certain place in sufficient numbers that technically they are not to be regarded as trespassers, although such they really are within the ordinary definition of the word, and in this technical sense it is said a railroad company owes to licensees, but not to trespassers, a lookout duty; but decedent, in this case, if a licensee at all, was such in the ordinary meaning of the term, and not in the technical sense in which it is often used to differentiate the company's obligations and liabilities. This confusion of terms is sought to be obviated sometimes by referring to a licensee toward whom a lookout duty is not imposed, as a bare licensee; but the result obtained is hardly satisfactory. The duty of a railroad company, in the absence of statutory regulation, towards persons using its tracks and premises (unless themselves charged with a lookout duty) depends upon, and is determined by, whether or not their presence may reasonably be anticipated. The law has as much regard for the safety of one class as for the other, and, except as modified by the doctrine of assumed risks, wherever and whenever their presence must reasonably be anticipated, imposes a lookout duty. In other words, the duty of lookout and signals depends upon what is reasonable care in each case, and that is dependent upon the extent of the use by the public, or employes not themselves charged with the duty of lookout; for what is reasonable care at places in the country, where but few persons, whether of the public or employes, use the track, would manifestly be totally inadequate in cities, at public crossings, in switching yards and other places where people are frequently upon the tracks. Members of the public are frequently upon the company's tracks in incorporated towns and cities, at public crossings and at other places where an extensive use of the tracks is permitted by the company, and at such places the company must anticipate their presence and be governed accordingly. Likewise, in the case of employes

not themselves charged with the duty of lookout, in switching yards and other places where employes in considerable numbers are habitually at work, the company must, in the operation of its trains, anticipate their presence and exercise a proportionate care. Unless an employe, by reason of his duties, has assumed the risk of danger from passing trains, there can be no reason for a different rule respecting his life and safety at places where he may be expected than for members of the public where they have a right to be. Hence, except where he has assumed the risk, an employe is entitled to the same care for his safety as members of the general public, and the authorities are unanimous in according him this protection. As to a railroad company's duty toward members of the public, at places where their presence in considerable numbers must be anticipated, the following Kentucky cases are instructive: I. C. R. Co. v. Murphy's Admr., 123 Ky. 794; L. & N. R. Co. v. McNary's Admr., 128 Ky. 408; L. H. & St. L. Ry. Co. v. Lyons, 146 Ky. 603; C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 74; McKnight's Admr. v. L. & N. R. Co., 168 Ky. 86; C., St. L. & N. O. R. Co. v. Armstrong's Admr., 168 Ky. 104.

That the same rule is applicable with reference to employes not themselves charged with the duty of lookout, at places where their presence must be anticipated, is recognized in the following cases: L. & N. R. Co. v. Lowe, 118 Ky. 260; C., N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445, and many others.

The exception, mentioned above, to the rule that a lookout duty depends upon the extent of the use, is where persons are granted the privilege of working, or are put to work by the company, at or near its tracks, whose duties compel them to be in a place of danger and are not so connected with the operation of trains as to carry an assumption of risk, but are such as to divert their attention from the passing trains. McCalley's Admr. v. C. & O. Ry. Co., 169 Ky. 47; Conniff v. L. H. & St. L. Ry. Co., 124 Ky. 766; Barber v. C., N. O. & T. P. Ry. Co., 14 Ky. Law Rep. 869; Cason's Admr. v. Covington &c. Bridge Co., 93 S. W. 19; Thompson on Negligence, vol. 2, sec. 1839; C., N. O. & T. P. Ry. Co. v. Winningham's Admr., 156 Ky. 434; C., N. O. & T. P. Ry. Co. v. Smith's Admr., 168 Ky. 185. This exception is upon the ground, certainly sound, that having stationed or permitted one who has not assumed the risks, to work in a dangerous place, the

company must take notice of his presence and provide for his safety. Mr. Pierce, obviously, was not of this class.

This accident did not occur in the company's yards, in an incorporated city or town, or at or near any crossing, but out in the country where no member of the public is shown to have a right to be, or to have been, except decedent upon a purely private mission not in any way connected with his employment. Under such circumstances, if the company owed him the duty of lookout, it would be hard to conceive how it could, in the operation of its trains, avoid the obligation to maintain a lookout at all times. This is not the law in this state, although such a rule is enforced in some jurisdictions. 33 Cyc. 786-789.

If we accept as a fact, that there were daily upon the tracks, at this place, the twelve or fifteen persons shown in the evidence, and consider them as members of the public, their number was not sufficient to carry a lookout duty. Willis' Admx. v. L. & N. R. Co., 164 Ky. 124; C. & O. Ry. Co· v. Nipp's Admx., 125 Ky. 49.

Even at a private crossing, the company is under no duty to maintain a lookout for its licensee, unless the number of such licensees is considerable and their use of the crossing is such that their presence there may be reasonably anticipated.

In the recent case of C. & O. Ry. Co. v. Hunter's Admr., 170 Ky. 4, the decedent was a licensee with the right to use a private crossing, and this court reversed the judgment of the lower court upon the ground that it was error to place upon the company the duty of lookout under the circumstances, saying:

"In order to impose a lookout duty upon a railroad company while running its trains over a private country crossing, it must be shown that the place of the accident was a place where the presence of persons on the track was to be expected; and that fact may be shown by the extent of the use made of the crossing made by the public."

In support of which statement C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 74, and Carter v. C. & O. Ry. Co., 150 Ky. 529, are cited. See also Cahill v. C., N. O. & T. P. Ry Co., 92 Ky. 345; L. & N. R. Co. v. McNary's Admr., 128 Ky., 420; Corder's Admr. v. C., N. O. & T. P. Ry. Co., 155 Ky. 536; L. & N. R. Co. v. Johnson's Admx., 161 Ky. 824; McKnight's Admr. v. L. & N. R. Co., 168

Ky. 86; C. St. L. & N. O. R. Co. v. Armstrong's Admr., 168 Ky. 104.

Negligence of the company was rested solely upon its failure to maintain a lookout and give signal warning, and, since the company was under no such duty in this case, there was a failure to show negligence, and a peremptory instruction should have been given.

It is insisted by counsel for appellee that the facts of this case bring it within the rule, recognized by a long line of authorities, imposing upon the company the duty of maintaining an effective lookout, to avoid injury to members of the public upon the company's premises, upon the company's invitation, for the transaction of business with it; but, as we have seen, this accident did not happen at a place where members of the public were invited for the transaction of business with the company, and decedent was, at the time and place of the accident, there upon a matter of his own private concern, and we do not, therefore, deem it necessary to refer to or discuss the authorities cited for appellee, since, though thoroughly established and approved, they are not applicable to this case.

For the reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent herewith.