## Chesapeake & Ohio Railway Company v. Price's Administrator.

(Decided February 26, 1918.)

### Appeal from Johnson Circuit Court.

1. Railroads—Trespassers—Lookout—Infants.—An infant, eighteen months of age, who strayed upon a railroad track at a place in

the country, 500 feet from a private crossing, and was run over and killed by a train, was a trespasser, and there was no duty upon those in charge of the train to maintain a lookout for her presence upon the track.

2.  Railroads—Injury to Trespassers—Trial—Directed Verdict.—In action for damages for the death of an infant trespasser, the evidence uncontradicted showing that those in charge of the train that ran upon and killed her used every appliance available for stopping the train after discovering her perilous position, a motion for a directed verdict for the defendant should have been sustained.

WORTHINGTON, COCHRAN & BROWNING and M. C. KIRK for appellant.

VAUGHN & HOWES and DAVID OSBORNE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Mona Price, eighteen months of age, was struck and killed by one of appellant's passenger trains, at a place in the country in front of her home and about five hundred feet from a private crossing. Her father, having qualified as administrator, instituted this action alleging her death resulted from the negligent operation of the train, and recovered of the railroad company a judgment for $2,000.00.

The company has appealed and insists the court erred in refusing its motion for a peremptory instruction, and in instructions given over its objection.

The little girl was last seen about five minutes before the accident, playing in the back yard of her home, which was adjacent to the railroad right of way, and in the yard fence was a gate presumably open. No one saw her upon or near the railroad track until the fireman on the engine that killed her, when within 275 or 300 feet, discovered her on the track as he says "kindly on all fours" and "right up before we struck the child it raised up on its feet." At about the same time, since he says the train was within "possibly a hundred yards, may be not so far," of the child, Charley Young, a passenger seated in the smoking car with his head out of the window, saw her "setting on the track on the end of the tie with its arm back against the rail," and he testified that he jerked his head back to keep from seeing the train hit the child.

The place where the child was struck is almost exactly midway on a curve of three degrees, 595 feet long, and,

for about 800 feet approaching the curve, the track is straight and the view is unobstructed all of this distance. So that, if the child was on the track prior to when she was seen by the fireman and Young, they could have seen her had they looked along the track in front of the train as they were on the inside of the curve, but the engineer was on his seat in the engine on the outside of the curve, and his view of the track on the curve was obstructed by the engine boiler, which extended in front of him some twenty-five feet, and although keeping a lookout ahead, he did not see the child at all. As soon as the fireman saw the child he shouted to the engineer that a child was on the track ahead of the train and the enginer, as quickly as he could, employed every means at hand to stop the train; but, as the train was making about thirty-five miles an hour and it had proceeded some little distance, probably as much as seventy-five or one hundred feet, before he could shut off the steam, apply the emergency brakes and sand the track, the train struck and killed the child before it could be stopped.

The train was stopped within about 650 feet from the place where the child was first seen by the fireman, or within something less than 600 feet if we allow as much as seventy-five feet for the time necessary for the fireman to inform the engineer and for him to act. This, according to all of the evidence of those qualified to testify upon the subject, was about as short a space as under the circumstances a stop could have been made, employing every appliance available for the purpose, and the uncontradicted evidence shows that everything that could have been done was done, although two witnesses for plaintiff, who were passengers on the train, testified that the train came to a stop very gradually and not as if making an emergency stop.

Under this evidence, we think defendant was clearly entitled to a peremptory instruction, and that the court erred in overruling the motion therefor, which was done evidently upon the theory that it was negligence upon the part of the employes in charge of the engine not to have discovered the presence of the child upon the track in time to have stopped the train before striking her, as the court in the instructions given to the jury authorized a finding for the plaintiff if, in their judgment, from the evidence, her presence could have been discovered in time to have prevented her injury.

This placed upon the defendant a lookout duty at a place in the country where no such duty, under the law of this state, exists, and besides, assumed the child was on the track before any one saw her there. From the evidence, the child may have gotten, and possibly did get, upon the track just as she was discovered by the fireman, as he says she was then "kindly on all fours" and that she then raised to her feet, and, although Charley Young says when he saw the child, at about the same time and place that the fireman saw her, she was sitting on the track on the end of the tie, there is no evidence that she had not just gotten on the track; in fact, she was last seen about five minutes before by her grandmother, Mrs. Butcher, playing in the back yard, possibly 100 feet or more away, and there is no evidence whatever from which it might even be inferred she was upon the track until the fireman saw her, and there was not then any possible chance of stopping the train before striking her.

The facts of this case and those of O'Bannion's Admr. v. Southern Railway Co. in Ky., 110 S. W. 329, are strikingly alike, and in that case a judgment upon a directed verdict for the defendant was affirmed, and the doctrine approved that has been uniformly upheld in this state, though frequently attacked and not recognized in some jurisdictions, that although an infant of such tender years as this unfortunate little girl could not, of course, be guilty of contributory negligence, yet she must be regarded as a trespasser in measuring the duty of the railroad company. The same rule was approved quite recently in McKnight's Admr. v. L. & N. R. Co., 168 Ky. 86, 181 S. W. 947, under very similar circumstances, and the authorities and reasons in support of the rule are given so fully in these two cases that it is not necessary to repeat same here, unless to call special attention to the opinion in L. & N. R. Co. v. Logsdon's Admr., where the reasons in support of the rule are also quite fully set out, and we are not disposed to depart from it, although there is weighty argument supported by much authority against it. But even if the duty of a lookout were applicable here, there is no evidence that decedent was upon the track until the fireman saw her, and its application would be of no avail under the evidence. There was some effort made by plaintiff to prove that, within some fifteen to fifty feet of the place of the

accident, there was a private crossing, but in this he utterly failed and even if he had succeeded it is not shown the decedent was upon the crossing, and besides, the proof of its use was totally insufficient to bring this case within the exception to the generally recognized rule in C. N. O. & T. P. Ry. Co. v. Dickerson's Admr., 102 Ky. 560, so as to place upon the defendant a lookout duty even if the crossing existed. This whole question is so fully discussed in recent cases that there is no reason or excuse for its reconsideration now. See Stull's Admx. v. Ky. T. & T. Co., 172 Ky. 650; C. & O. Ry. Co. v. Hunter's Admr., 170 Ky. 4; Spiegle v. C. N. O. & T. P. Ry. Co., 170 Ky. 285; McKnight's Admr. v. L. & N. R. Co., *supra.*

It is also argued by counsel for plaintiff that because the engineer did not reverse the engine, he did not use all means at hand to stop the train after being made aware of the child's peril, but all of the witnesses who testified upon the subject said this would have been without effect in stopping the train, since the steam was shut off and it was immaterial in which direction the lever was set, as without power applied the wheels would not have been affected in any way even if the lever had been reversed, and this seems to us quite logical, and there is no evidence whatever to the contrary.

For the reasons indicated, the judgment is reversed and cause remanded for proceedings consistent herewith.